**Charles A. BRADY, Appellant,**

v.

**Bettie J. GRAHAM, Appellee.**

**No. 91–CV–625.**

District of Columbia Court of Appeals.

Submitted May 19, 1992.
Decided July 31, 1992.

Lloyd D. Iglehart, was on the brief for appellant.

John E. Scheuermann, was on the brief for appellee.

Before FERREN, STEADMAN and FARRELL, Associate Judges.

STEADMAN, Associate Judge:

Appellant Charles A. Brady, a member of the District of Columbia Bar, appeals from an order of the trial court denying his motion to set aside a default judgment entered against him on October 18, 1990. Appellant argues that the trial court abused its discretion in denying his motion, asserting failure of service and the existence of a prima facie defense. We affirm.

I

The appellee, Bettie J. Graham, initially filed a complaint against attorney Weldon M. Blake, who had represented Graham in a landlord/tenant matter, alleging that Blake had failed to account for and tender rental payments (in the form of post office money orders payable to Graham) that Blake had received from a tenant of Graham's. Graham subsequently amended the complaint to add appellant as a party-de-

fendant on the ground that Blake had endorsed the money orders to appellant, who then had deposited the funds in his client trust account, and that appellant had failed to provide an accounting of these funds as requested.[1] A return of the private process server, filed with the court on May 1, 1990, stated that appellant was served with process on April 27, 1990. When appellant failed to file an answer to the complaint, Graham sought a default against appellant, and on June 19, 1990, the clerk entered a default subject to ex parte proof. After a hearing at which Graham presented ex parte proof of appellant's deposits of the money orders in his client trust account, in the form of copies of the money orders,[2] the trial court ordered the entry of judgment against appellant. The record shows that copies of the trial court's order and the judgment itself were mailed to appellant on October 23, 1990 and November 8, 1990, respectively.[3]

On December 14, 1990, a writ of attachment of appellant's bank accounts was issued, and the bank filed an answer on January 3, 1991. On January 10, 1991, appellant moved to set aside the default judgment. In his motion, to which an answer was attached, appellant claimed that a copy of the amended complaint had not been served on him. He admitted, however, that he had received a copy from the

Office of Bar Counsel.[4] Appellant also admitted that Blake had periodically given him "checks and other payments" to cash, but that "all payments endorsed by [appellant] and deposited into his Trust Account were immediately paid out to defendant Blake, on his behalf,[5] or cashed." Finally, appellant contended, without elaboration, that he had provided an accounting to Graham through the Office of Bar Counsel. The trial court denied appellant's motion to set aside the default judgment on May 1, 1991, and appellant noted a timely appeal.

## II

Appellant's primary contentions on appeal, as at the trial level, are that he was not served with a copy of the amended complaint and that he had a prima facie defense to appellee's claim.[6] Nothing in the record before the trial court suggested that there was a genuine dispute over whether appellant was served with process. Faced with a return of the private process server stating that appellant had been served with process on April 27, 1990, appellant offered only the naked assertion that he was not served. In response, Graham provided the trial court with additional evidence of the fact of service in the form of an affidavit of the process server that set forth in detail the circumstances sur-

1. In her motion to amend the complaint, Graham had noted that defendant Blake had not been served and that he apparently had left the jurisdiction.

2. The money orders were payable to "Betty J. Graham," and were endorsed in her name by "Weldon Blake, attorney" and by appellant before being deposited into appellant's client trust account at the Industrial Bank of Washington.

3. Although the trial court ordered the entry of judgment only against appellant, specifically designating him by name, the original judgment subsequently entered by the clerk was against both Blake and appellant ("Weldon M. Blake, et al."). On December 14, 1990, the clerk amended the judgment so that it ran only against appellant. Appellant claimed in his motion that he had received notice that the original judgment had been entered against only Blake; appellant did not, however, either specify what notice he had received or specifically deny that

he had received the trial court's order or the original judgment.

4. Apparently, the Office of Bar Counsel undertook some sort of investigation of appellant in connection with his deposits of the money orders at issue here.

5. The answer stated that all funds were paid to Blake "or to third parties on his behalf."

6. Appellant's claims are based on Super.Ct.Civ.R. 60(b), which authorizes relief from judgments or orders of the Superior Court in particular instances. *See, e.g., Hawkins v. Lynnhill Condominium Unit Owners Ass'n,* 513 A.2d 242 (D.C.1986); *Clark v. Moler,* 418 A.2d 1039, 1043 (D.C.1980). In particular, the existence of a prima facie defense is one of four factors for the trial court to consider in ruling on motions brought under Rule 60(b)(1), which provides for relief based on "[m]istake, inadvertence, surprise, or excusable neglect." *See Clark, supra,*

rounding the service on appellant, including a physical description of appellant and a summary of the process server's conversation with him at the time service was effected. Appellant failed at the trial level to challenge, by affidavit or otherwise, the substance of the process server's affidavit, and never requested a hearing on this issue.[7] Given the complete one-sidedness of the evidence, we conclude that appellant failed to articulate at the trial level any basis for setting aside the default judgment on a theory of failure of service. *See Hawkins, supra* note 6, 513 A.2d at 244–45.

◼ Appellant's claim of a prima facie defense similarly fails to support the contention that the trial court abused its discretion in denying appellant's motion. As a general matter, an attorney who possesses the funds even of one of who is not a client in the traditional sense has duties as a fiduciary to safeguard those funds. *See In re Burton,* 472 A.2d 831, 835–37 (D.C.) (per curiam) (attorney found to have breached fiduciary obligation as trustee even though no conventional attorney/client relationship existed between him and the trust beneficiaries), *cert. denied,* 469 U.S. 1071, 105 S.Ct. 563, 83 L.Ed.2d 504 (1984); *In re Vogel,* 382 A.2d 275, 279–80 (D.C.1978) (per curiam) (rejecting assumption that a lawyer's responsibilities for funds in his possession should vary depending on whether the funds belong to a client or a third party); CHARLES W. WOLFRAM, MODERN LEGAL ETHICS § 4.8, at 178 (1986). The rule is not different simply because two attorneys are involved. *See* III AUSTIN W. SCOTT AND WILLIAM F. FRATCHER, THE LAW OF TRUSTS § 224.3, at 410–11 (4th ed. 1988) ("[O]ne trustee is liable if he permits the other trustee to have the sole custody of the trust property and the latter misappropriates the property"); L.S. Tellier, Annotation, *Coexecutor's, Coadministrator's, or Cotrustee's Liability for Defaults or Wrongful Acts of Fiduciary in Handling Estate,* 65 A.L.R.2d 1019, 1092–93 (1959).

◼ Appellant's motion and verified answer stated nothing more than that appellant acted as Blake's agent when he cashed the money orders through his client trust account and then turned the funds over to Blake or to third persons on his behalf. This bare-bones explanation of the circumstances surrounding appellant's cashing of Graham's money orders failed to suggest in any way how the general rules governing attorney liability for breach of a fiduciary duty might not bear on this case. *See In re Stone,* 588 F.2d 1316, 1319 (10th Cir.1978) (showing of prima facie defense is made where motion alleges facts which, if true, would constitute a defense to the action; principles of notice pleading are inapplicable to the context of motions to set aside a default judgment), *cited in Clark v. Moler, supra* note 6, at 1043. Under these circumstances, the trial court properly concluded that appellant failed to disclose in his motion sufficient facts or legal theory supporting his claimed defense.[8] *See Clark v. Moler, supra* note 6, at 1043 (trial court may require movant to disclose underlying facts supporting a defense; "something more than a bald allegation" is required).

Furthermore, the bare fact that one may have a defense to the action does not in and of itself constitute "[m]istake, inadvertence, surprise, or excusable neglect" for purposes of Super.Ct.Civ.R. 60(b)(1), and appellant does not advance any reason—other than his unfounded claim that he was not served—for his failure to file an an-

---

418 A.2d at 1043; *see also, e.g., Mewborn v. U.S. Life Credit Corp.,* 473 A.2d 389, 391 (D.C.1984).

7. On appeal, appellant asserts in his brief that he is not "balding down the middle of his head," as the process server's affidavit stated. Appellant's failure to make this one minor challenge to the process server's affidavit in the first instance to the trial court precludes its consideration as a factor on appeal. *Miller v. Avirom,* 127 U.S,App.D.C. 367, 384 F.2d 319 (1967).

8. Appellant asserts that he provided an accounting to Graham through the Office of Bar Counsel. Although Graham acknowledged in her brief that Bar Counsel provided her with some sort of statement from appellant, appellant has never attempted to explain what this "accounting" was or suggested that the "accounting" was more than another documentary admission that appellant had cashed the money orders for Blake and turned the funds over to him or to third persons on his behalf.

swer. *See Joyce v. Walker*, 593 A.2d 199, 200–02 (D.C.) (even conceding appellant presented an adequate defense, appellant was not entitled to relief under Rule 60(b)(1) where the record did not support a finding of mistake or inadvertence), *cert. denied,* —— U.S. ——, 112 S.Ct. 645, 116 L.Ed.2d 662 (1991); *901 Corp. v. A. Sandler Co.,* 254 A.2d 411, 412 (D.C.1969) ("the mere allegation that there was excusable neglect in failing to answer the complaint would not warrant vacating the judgment").

Finally, none of the other factors relevant to the trial court's consideration of whether to vacate the default judgment cuts in appellant's favor. See note 6 *supra* and cases cited therein. Appellant concedes that he received actual notice of the action through the Office of Bar Counsel. Similarly, the factors of good faith and prompt action upon discovery of the judgment did not particularly weigh in favor of vacating the default judgment in light of appellant's failure to take any action whatever with respect to the litigation until his bank account was attached. Lastly, vacating the default judgment, which would release the writ of attachment, could prejudice Graham *vis-a-vis* competing creditors.

*Affirmed.*