Fernando E. MIRANDA, Appellant,

v.

Pedro CONTRERAS, Appellee.

No. 98–CV–1160.

District of Columbia Court of Appeals.

Argued April 13, 2000.

Decided May 18, 2000.

Richard K. Green, Rockville, MD, for appellant.

Henry A. Escoto, Washington, DC, for appellee.

Before SCHWELB and RUIZ, Associate Judges, and KING, Senior Judge.

RUIZ, Associate Judge:

Appellant, Fernando E. Miranda, appeals from the entry of an adverse default judgment in the amount of $15,643.26. Miranda argues that the trial court abused its discretion by refusing to set aside the default judgment without first holding a hearing to inquire into the factual dispute over whether Miranda was served properly with the summons and complaint and whether assurances were made by opposing counsel that he would agree to consent to striking the default in the event that settlement negotiations were unsuccessful. Given the law's preference for resolution on the merits rather than by default, we agree that on the facts of this case a hearing is necessary to resolve the parties' contrary factual allegations. Accordingly, we remand for a hearing, findings of fact and conclusions of law concerning counsel's representations and, if necessary, on whether Miranda was properly served with process.[1]

### Factual Summary

Appellee, Pedro Contreras, commenced this action by filing a complaint in the Superior Court for the District for Columbia on October 28, 1997. The complaint, styled as an action for "Unjust Enrichment," alleges that Miranda and Contreras "entered into a binding contract on or about May 5, 1995," in which Contreras would "loan [Miranda] the sum of $49,963.26 to develop a business venture known as the El Chaparrastique Restaurant" in return for consideration in the form of a partnership in the restaurant.[2] According to allegations in the complaint, the contract was subsequently modified by written agreement between the parties and provided for the repayment of the $49,963.26 to Contreras. The modified written agreement states that Contreras loaned Miranda the money to open the restaurant and, having paid Contreras the sum of $3,000, Miranda would repay the balance in eighteen monthly payments of $2610.00. Miranda allegedly made eleven such payments and then discontinued the payments.

A notarized affidavit of service stating that Miranda was personally served at his Maryland address with a copy of the summons, complaint and initial order on November 8, 1997, was filed with the court on November 10, 1997. No response to the complaint having been filed, the clerk's office entered a default against Miranda on December 18, 1997, pursuant to Superior Court Civil Rule 55(a). On February 17, 1998, counsel for Contreras filed a "Motion for Judgment and Request for Ex Parte Proof Hearing." On February 26, 1998, Miranda filed an "Opposition to Motion for Judgment and Motion to Set Aside Default," accompanied by a verified "Answer and Counterclaim."

Miranda's opposition to the motion for judgment, signed by Miranda's counsel, Richard K. Green, recounted that Miranda hired the attorney on December 2, 1997, and represented that the summons and complaint had been found between the

---

1. Miranda also argues that the trial court erred as a matter of law by awarding "unjust enrichment" damages predicated on a written contract. This claim is without merit. See *infra* at II. Additionally, Miranda argues that Contreras' motion for judgment was not timely filed pursuant to Superior Court Civil Rule 55–II(a), which provides that a motion for judgment should be entered within sixty days

of the default. Miranda's counsel at oral argument conceded that there was no legal prejudice to Miranda flowing from the trial court allowing Contreras to file his motion for judgment one day out of time.

2. The original contract concerning the loan and partnership is not in the record before us.

main door and the storm door of Miranda's residence. The motion further averred that on December 3, 1997, Mr. Green contacted Contreras' counsel, Henry A. Escoto, informing Mr. Escoto that service was insufficient and requesting documentary evidence of Contreras' claims in hope of a prompt resolution of the claims. On December 19, 1997, Mr. Green notified Mr. Escoto that he would be out of the area for the Christmas holidays and requested an extension of time to answer the complaint until after the first of the year when settlement discussions might moot the necessity of filing an answer. Mr. Green was notified by Mr. Escoto on January 5, 1998, that a default had been entered in the case, at which time Mr. Escoto allegedly agreed to consent to the striking of the default if settlement negotiations were unsuccessful. According to Miranda's motion, thereafter, when the parties were unable to agree on settlement terms, Mr. Escoto refused to enter into the agreed-upon consent motion and instead filed Contreras' motion for judgment.

The verified "Answer and Counterclaim," signed and "duly sworn on oath" by Miranda, avers "insufficiency of process" as Miranda's first defense: "The complaint was found laying in front of the defendant's front door by the defendant's wife." The answer pleads numerous defenses, including duress, supported by an allegation that "[t]he plaintiff publicly communicated a threat to kill the defendant if he did not agree to pay money to the plaintiff."

On March 23, 1998, the trial court docketed an order granting judgment to Contreras in the amount of $18,270.00 without a hearing. On March 31, 1998, Miranda moved the court to alter, amend or vacate the judgment, repeating the "representation by the plaintiff's counsel that he consented to setting aside the default if settlement were not reached." In response, Contreras' "Opposition to Defendant's Motion to Alter, Amend or Vacate," signed by Mr. Escoto, does not claim directly that no such representation was made, only that

Mr. Green's "allegations are without merit," apparently because "[a]t no time did undersigned counsel advise, persuade, encourage or suggest to Defendant's counsel not to respond to the complaint." On May 1, 1998, the court entered an order leaving the default intact but vacating the judgment pending an *ex parte* proof hearing on the issue of damages. On June 12, 1998, the court held an *ex parte* proof hearing on damages and thereafter judgment was entered in favor of Contreras in the reduced sum of $15,643.26.

## Analysis

### I. Setting Aside the Default Judgment

■ "The ruling on a motion to vacate default judgment is within the sound discretion of the trial judge." *Dunn v. Profitt*, 408 A.2d 991, 992 (D.C.1979). However, we have often noted that "[a] strong judicial policy favors deciding cases on their merits rather than by default judgment." *Hawkins v. Lynnhill Condominium Unit Owners Ass'n*, 513 A.2d 242, 244 (D.C.1986) (per curiam). "Where a timely motion is made to vacate a default judgment, the policy of favoring trial on the merits will often justify reversal where even a slight abuse of discretion has occurred in refusing to set aside a judgment." *Dunn*, 408 A.2d at 993. "In exercising its discretion, the trial court must choose what is right and equitable under the circumstances and the law and state the reasons which support its conclusion." *Firemen's Ins. Co. v. Belts*, 455 A.2d 908, 909 (D.C.1983) (per curiam) (internal quotation omitted).

### A. Rule 60(b)(6)

■ Superior Court Civil Rule 60(b) provides that "the Court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for ... (6) any other reason justifying relief from the operation of the judgment." Super. Ct. Civ. R. 60(b)(6). Miranda argues that the default judgment should have been set aside under Rule 60(b)(6)

because he has demonstrated good cause for the failure to file an answer or other responsive document; namely, ·that the parties promptly and· in good faith engaged in negotiations and that Contreras' counsel agreed to consent to striking of the default if settlement negotiations were unsuccessful. "Rule 60(b)(6) is properly invoked in extraordinary circumstances or where a judgment may work an extreme and undue hardship," but is "not narrowly defined." *Starling v. Jephunneh Lawrence & Assocs.*, 495 A.2d 1157, 1161 (D.C. 1985). In order to determine whether to set aside a default judgment, the court considers the following factors: whether the movant 1) had actual notice of the proceeding; 2) acted in good faith; 3) presented an adequate *prima facie* defense; and 4) acted promptly. *See Dunn*, 408 A.2d at 993.

▬▬ It is the trial court's "responsibility to inquire where matters are raised which might entitle the movant to relief under Rule 60(b)." *Starling*, 495 A.2d at 1162. In the present case "the record fails to show that the trial judge even considered these factors, despite their applicability." *Dunn*, 408 A.2d at 993. In

Miranda's "Opposition to Motion for Judgment and Motion to Set Aside Default," and again in Miranda's "Motion to Alter, Amend or Vacate Judgment," Mr. Green indicated that "[p]laintiff's counsel agreed to consent to striking the default if settlement negotiations were unsuccessful." Mr. Escoto, for his part, appears to have generally denied that Mr. Green was misled.[3] In the appellate brief and at oral argument, Mr. Escoto has stated that he made no such representation as alleged. The trial court did not inquire into, and the record is silent as to whether it considered, counsels' discussions in rejecting Miranda's opposition to entry of judgment. With respect to Miranda's motion to set ·aside the default, the trial court noted only that the "alleged 'motion' included in the opposition ... was not properly before the court," apparently because it was not filed separately from the opposition to entry of judgment. There is also no indication that the trial court considered, or, if so, how it resolved, counsels' conflicting allegations in the order denying in part Miranda's motion to alter, amend or vacate the judgment, which was properly presented to the court.[4]

**3.** We note that the representations of both counsel in pleadings before the Superior Court are subject to sanction under Superior Court Civil Rule 11, which provides in pertinent part:

(b) *Representations to court.* By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

. . . .

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(c) *Sanctions.* If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated,

the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

**4.** "[T]here is a distinction between the appropriate standard for setting aside a *default* and that appropriate for setting aside a *default judgment.*" *Jackson v. Beech*, 205 U.S.App. D.C. 84, 88, 636 F.2d 831, 835 (1980). "*A default* can be set aside under Rule 55(c) for 'good cause shown,' but a default that has become final as a *judgment* can be set aside only under the stricter rule 60(b) standards for setting aside final, appealable orders." *Id.* (interpreting identical federal rules). Miranda does not challenge the trial court's decision that his motion to set aside the default was not properly before the court. Accordingly, we review Miranda's claims under the Rule 60(b) standards. We note that Miranda did not specifically reference Rule 60(b)(6) in his motion to alter, amend or vacate judgment or the accompanying supporting memorandum. However, given that once judgment

Although Miranda's counsel concedes that he could have filed a paper with the court once he was on notice of the attempted service so as to prevent the original default,[5] we nevertheless believe that a judgment secured by misrepresentations by one counsel to another is an "extraordinary circumstance" warranting relief under Rule 60(b)(6). *See, e.g.*, D.C. Prof'l. Conduct R. 8.4 (2000) ("It is professional misconduct for a lawyer to: ... (c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation[ ]...."); D.C. Bar Voluntary Standards for Civility in Prof'l. Conduct ¶ 6 (2000) ("While we owe our highest loyalty to our clients, we will discharge that obligation in the framework of the judicial system in which we apply our learning, skill, and industry in accordance with professional norms. In this context, we will strive for orderly, efficient, ethical, fair, and just disposition of litigation...."). As colleagues at bar and officers of the court, and to ensure the efficient, accurate and just operation of judicial proceedings, counsel must be able reasonably to rely on representations made by fellow counsel in the context of litigation. Conversely, counsel should not be able to reap the windfall of his or her misrepresentation to fellow counsel. Accordingly, the record before the trial court, as well as facts asserted on appeal, "indicates circumstances which may entitle [Miranda] to relief ... for 'any other reason' under Rule 60(b)(6)." *Starling*, 495 A.2d

at 1162. As these facts are in dispute, a hearing on the issue is required.

Mr. Green represented to this court at oral argument that if the default judgment were set aside under Rule 60(b)(6) his client would waive the issue of sufficiency of service. Thus, if on remand the trial court finds that the default judgment should be set aside, it need not reach the issue of sufficiency of service. If the trial court finds that no such misrepresentation was made and other factors do not warrant setting aside the default, or makes the unlikely determination that a misrepresentation was made but does not satisfy the Rule 60(b)(6) standard applied to this case, then it will be necessary for the trial court to make a factual determination on the record regarding the adequacy of service.[6]

## B. Rule 60(b)(4)

"A default judgment entered in the absence of effective service of process is void," even though the defendant has actual notice of the action. *McLaughlin v. Fidelity Sec. Life Ins.*, 667 A.2d 105, 107 (D.C.1995). Thus, Superior Court Civil Rule 60(b) provides that "the Court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: ... (4) the judgment is void." Super. Ct. Civ. R. 60(b)(4). Whereas simply leaving a copy of the summons and complaint at a defendant's residence is insuffi-

was entered Miranda's argument was subject to the Rule 60(b) standards, we read his argument that "good cause" was shown for the failure to answer or appear as supporting relief pursuant to Rule 60(b)(6).

5. Without proper service the court has no personal jurisdiction, and the court thus lacks power to act unless the defendant has waived service. *See, e.g., Cruz v. Sarmiento*, 737 A.2d 1021, 1026 (D.C.1999); *Parker v. Frank Emmet Real Estate*, 451 A.2d 62, 66 (D.C.1982); *Rosenberg's, Inc. v. Stanley Lloyd, Inc.*, 183 A.2d 835, 837 (D.C.1962). Miranda's counsel is correct that it may have been prudent to file a paper with the court, but "if a defendant believes that the court is without jurisdiction he has the option to ignore the proceedings,"

*see Hinton v. Hinton*, 395 A.2d 7, 10 (D.C. 1978), and is thus under no obligation to do so. Entry of the default, however, is an indication that the court believes the defendant to be properly before it.

6. Even if the facts adduced on remand are not as stark as those presented to this court, for example, a misunderstanding rather than a misrepresentation between counsel engaged in negotiations, the trial court should consider whether relief from judgment is appropriate under Superior Court Civil Rule 60(b)(1). *Cf. Jackson, supra* note 5, 205 U.S.App.D.C. at 90, 636 F.2d at 837 ("Default judgments were not designed as a means of disciplining the bar at the expense of the litigants' day in court.").

cient service under either Maryland or District of Columbia law, and would warrant vacation of the judgment as void, personal service on the defendant is sufficient service under the law of the District of Columbia, as well as Maryland.[7]

■ According to the process server's affidavit, personal service was made on Miranda at his home in Maryland. "[T]he return of service by a process server may be impeached only by strong and convincing evidence." *Firemen's Ins. Co.*, 455 A.2d at 909; *see also Alexander v. Polinger Co.*, 496 A.2d 267, 271 (D.C.1985) ("[C]lear and convincing proof is required to rebut the presumption of [a process server's returns] verity."). Contreras argues that Miranda's bare assertion that he was not served is insufficient to set aside the default judgment. Although we agree with that proposition, it does not address Miranda's point that he was entitled to a hearing on the question of service. "A trial court may properly deny a motion to vacate a default judgment if the moving party fails or declines to present witnesses or other evidence to support his claim of lack of service," but the preference is clearly in favor of a hearing before such a determination is made. *Hawkins*, 513 A.2d at 244 n. 5 (noting cases which have denied motions to vacate default for lack of service only after a hearing on the sufficiency of service). Contreras' argument conflates the ultimate conclusion, that Miranda has or has not rebutted the presumption that the return of service by the process server is valid, with the opportunity to present evidence in support or derogation of that conclusion.

The present case is readily distinguishable from both *Firemen's Insurance* and *Castro v. Universal Acceptance Corp.*, 200 A.2d 202 (D.C.1964), each of which Contreras commends to this court in support of his contention that Miranda has failed to meet his burden of disproving service. Notably, in both cases the trial court determined that service was adequate only after the party was given an opportunity for a hearing. In *Firemen's Insurance*, the process server's affidavit showed service upon "Dorothy Belts . . . a person of suitable age and discretion then residing therein . . . ." 455 A.2d at 908–09. At the hearing on the issue of service, the defendant-appellee denied receipt of the court papers but testified that his wife Dorothy resided with him at the address on the process server's return. Dorothy Belts did not testify at the hearing; nor did the appellee in *Firemen's Insurance* testify that his wife had not been served. *See id.* at 909. Thus, there was no issue whether service had been proper. In *Castro*, the process server's return stated that he had left copies of the court papers with an individual at the defendant-appellant's usual place of abode. *See* 200 A.2d at 202. The defendant thereafter submitted an affidavit averring that she had never maintained her dwelling at the address in the process server's return, although it was stipulated that the defendant leased the

---

7. Miranda argues that, as a resident of Maryland, he should be served in accordance with Maryland law. However, Superior Court Civil Rule 4 provides that service may be made "pursuant to District of Columbia law, *or* the law of the state or territory in which service is effected." Super. Ct. Civ. R. 4(e)(1) (emphasis added). In the District of Columbia service may be made

> by delivering a copy of the summons and the complaint and initial order to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein . . . .

Super. Ct. Civ. R. 4(e)(2). In Maryland service may be made

> (1) by delivering to the person to be served a copy of the summons, complaint, and all other papers filed with it; (2) if the person to be served is an individual, by leaving a copy of the summons, complaint, and all other papers filed with it at the individual's dwelling house or usual place of abode with a resident of suitable age and discretion; or (3) by mailing to the person to be served a copy of the summons, complaint, and all other paper filed with it by certified mail . . . .

Md. R. Civ. P. 2–121(a) (2000).

apartment at which the process was served. We specifically credited that "[t]he trial court acted properly in giving defendant an opportunity to appear with witnesses to establish her true place of residence...." 200 A.2d at 203. The trial court found that the presumption of correctness in the official return of service had not been overcome only after the "[d]efendant declined th[e] opportunity [for a hearing] and elected to stand on her affidavit." *Id.*

The present case is similarly distinguishable from *Brady v. Graham*, 611 A.2d 534 (D.C.1992), in which, faced with the defendant-appellant's "naked assertion" that he had not been served, the court was presented with an affidavit of the process server that "set forth in detail the circumstances surrounding the service on appellant, including a physical description of appellant and a summary of the process server's conversation with him at the time service was effected." 611 A.2d at 535–36. Brady never asked for a hearing on the issue of service and "failed at the trial level to challenge, by affidavit or otherwise, the substance of the process server's affidavit...." 611 A.2d at 536. In light of the "complete one-sidedness of the evidence," the court concluded that Brady had failed to articulate any basis for setting aside the default for lack of service. *Id.* In this case no additional affidavit or other evidence setting forth in detail the circumstances of service has been presented to the court in response to Miranda's challenge to the sufficiency of service. Moreover, in his opposition to Contreras' motion for entry of judgment and in his motion to alter, amend or vacate judgment, Miranda requested an oral hearing on the question of deficient personal service.

The verified answer and counterclaim, signed and sworn by Miranda, claimed that his wife found the complaint lying in front of their front door, and that, as a result, service was insufficient. This document raises a "significant factual dispute" as to the verity of the process server's affidavit. *Hawkins*, 513 A.2d at 244. Having raised a factual issue over whether he was personally served, Miranda should have an opportunity to "proffer[ ] or present[ ] evidence which would rebut the presumption that the [process server's] return[ ][is] valid." *Alexander*, 496 A.2d at 271. In this case, the process server's affidavit states that the process server personally served Miranda at his home address on November 8, 1997. At a hearing on this issue, the process server's affidavit could be impeached by Miranda's wife, who could confirm or deny that she discovered the summons and complaint as alleged. As the record does not include a return receipt signed by Miranda, the process server could be questioned as to why he did not state specific facts regarding service on the affidavit, as required on the service form. Likewise, Contreras could elicit additional evidence of the fact of service from the process server. If, after opportunity for a hearing, Miranda has mustered only the "naked assertion that he was not served," *Brady*, 611 A.2d at 535, without some corroborating evidence, *see Castro*, 200 A.2d at 202, then he will have failed to meet his burden. *See Alexander*, 496 A.2d at 271; *Firemen's Ins. Co.*, 455 A.2d at 909. At this juncture, however, such a determination is premature.

## II. Unjust Enrichment

We address Miranda's final argument, that the trial court erred as a matter of law by awarding "unjust enrichment" damages predicated on a written contract, in the event that on remand the trial court determines that the default judgment should stand and that Miranda was properly served. Although we have held that "there can be no claim for unjust enrichment when an express contract exists between the parties," *Schiff v. American Ass'n of Retired Persons*, 697 A.2d 1193, 1194 & n. 2 (D.C.1997), an *ex parte* proof hearing on damages does not consider the merits of the cause. "[T]he entry of a default 'operates as an admission by the

defaulting party that there are no issues of liability, but leaves the issue of damages unresolved until entry of judgment.'" *Lockhart v. Cade,* 728 A.2d 65, 68 (D.C. 1999) (quoting 46 Am.Jur.2d *Judgments* § 266, at 579 (1994)). *See also Firestone v. Harris,* 414 A.2d 526, 528 (D.C.1980) (entry of default establishes the non-defaulting party's right to recover); *Taylor v. Johnson,* 262 A.2d 803, 804 (D.C.1970) (the effect of the entry of default is the admission of the truth of well-pleaded allegations in the complaint). Accordingly, at an *ex parte* hearing on damages the only issue before the trial court is the proof and extent of damages owed.

Although the complaint is styled "Unjust Enrichment," the complaint alleges that Miranda and Contreras "entered into a binding contract on or about May 5, 1995," in which Contreras would "loan [Miranda] the sum of $49,963.26 to develop a business venture" and for a partnership interest. The complaint further avers that "the parties modified the contract so that Mr. Contreras would no longer be a partner in the restaurant," thereupon entering "a written agreement for [Miranda] to repay [Contreras] the full amount of the loan." The trial court was presented with a signed and notarized copy of this agreement in which Miranda admits the debt and agrees to repay a certain sum to Contreras. The trial court found that "[w]hether this complaint is interpreted as a complaint on breach of contract, or a complaint for unjust enrichment, ... based on the default the evidence suffices." [8] If on remand the default judgment is not set aside under Rule 60(b), the trial court's awarding of damages is correct as a matter of law because, by defaulting, Miranda waived his opportunity to test the merits of Contreras' complaint.[9]

---

8. Courts often look behind how a complaint is styled to the allegations made in order to determine the claim or claims asserted. *See, e.g., Burgess v. Pelkey,* 738 A.2d 783, 787 (D.C. 1999), *cert. denied,* — U.S. —, 120 S.Ct. 1834, 146 L.Ed.2d 778 (2000); *Morfessis v. Baum,* 108 U.S.App.D.C. 303, 307 n. 9, 281 F.2d 938, 942 n. 9 (1960) ("How the appellant

The case is remanded for further proceedings consistent with this opinion.

*So ordered.*

styles his claim will not, of course, make it one for [the styled claim] unless from the facts alleged it can be seen to be such.").

9. This determination is without prejudice to Miranda's appeal from the trial court's factual findings and conclusions of law on remand.