Patrick THREATT, Appellant,

v.

Gregory WINSTON, Appellee.

Nos. 04–CV–191, 04–CV–545.

District of Columbia Court of Appeals.

Argued March 29, 2006.
Decided Sept. 21, 2006.

Ronald L. Webne, for appellant.

Sherman B. Robinson, for appellee.

Before FISHER, Associate Judge, and KING and SCHWELB,* Senior Judges.

FISHER, Associate Judge:

This dispute arises out of a landlord-tenant relationship. Appellant Patrick Threatt sued Gregory Winston for wrongful eviction, breach of covenant of quiet enjoyment, and conversion of personal property. The trial court granted appellee's motion to dismiss, concluding that the action was barred because the Landlord-Tenant Branch of the Superior Court's Civil Division previously had entered a default judgment granting possession of the apartment to Winston. Appellant argues that he should not have been precluded from bringing his wrongful eviction action because the previous judgment was void for lack of personal jurisdiction. We hold that Threatt did not follow the correct procedures for attacking the prior judgment and therefore affirm.

## I.  The Procedural Background

In December of 1999, Patrick Threatt leased an apartment Gregory Winston owned at 3824 V Street, S.E. (Apartment 101).  Within a few months a dispute arose about Threatt's alleged failure to pay rent. Efforts to resolve the dispute failed, and Winston filed a complaint for possession. Dwayne Boston submitted an Affidavit of Service By Special Process Server stating that after several unsuccessful attempts to personally serve Threatt, he had perfected service on June 21, 2000, by posting a copy of the complaint and summons on Threatt's apartment door.  *See* D.C.Code § 16-1502 (2001) (entitled *Service of summons* ).

Threatt failed to appear or defend, and on July 3, 2000, the Superior Court entered a default judgment granting possession of the apartment to Winston.  Winston obtained a writ of restitution, and on August 7, 2000, the United States Marshals Service removed Threatt's belongings, placing them outside, by the street.

Threatt did not seek to vacate the judgment against him, nor did he appeal to this court.  Instead, on October 9, 2001, more than fifteen months after the default judgment had been entered and more than fourteen months after the eviction had occurred, Threatt filed his civil complaint against Winston, seeking $1,000,000 in compensatory damages and $500,000 in punitive damages.  Threatt's complaint did not mention either the default judgment or the writ of restitution.

Winston answered Threatt's complaint, but, inexplicably, he likewise failed to mention either the default judgment or the writ of restitution.  It was only on October 27, 2003—after a jury had already been empaneled to hear the case—that the default judgment came to the trial court's attention,[1] during a colloquy about pre-trial issues:

The Court:  Tell me exactly what happened in this case.

Mr. Webne:  What happened in this case was Mr. Winston filed a suit for possession against Mr. Threatt.  Our ar-

---

* Judge Schwelb was an Associate Judge of the court at the time this case was argued.  His status changed to Senior Judge on June 24, 2006.

1.  The prior judgment had been mentioned in passing in some interim filings, but neither party identified it as creating an issue for the court to resolve.

gument and the basis of our case was that he was not notified of that—

The Court: [Y]ou're suing in this ... case for a notice that he did not receive in a landlord and tenant case?

Mr. Webne: That's one way to say it.

\* \* \*

The Court: [W]hat I'm hearing now is that there was a case, he got a default, he did not challenge the default. And now you want this Court to overrule the judgment in the landlord and tenant court by granting him another case to argue process that was never argued in the landlord and tenant case.

Mr. Webne: Exactly. . . .

After learning about the prior judgment, the court excused the jury and scheduled briefing and oral argument on whether the matter was properly before it. On February 6, 2004, at the conclusion of oral argu-

ment, Judge Terrell dismissed Threatt's complaint, explaining that it was barred under the doctrine of res judicata/collateral estoppel. Threatt timely noticed these appeals.[2]

## II. The Trial Court Properly Raised the Issue of Res Judicata[3]

Threatt first argues that it was improper for the trial court to raise the issue of res judicata *sua sponte.* He characterizes this intervention as raising an affirmative defense that Winston had neglected to plead. We do not agree with Threatt's characterization of the trial court's action or his legal conclusion.

We previously have made clear that while "res judicata is an affirmative defense that must be pleaded, ... a trial court may raise res judicata grounds *sua sponte* in the interest of judicial economy where, [as here,] both actions were brought before the same court."[4] *Carrollsburg v. Anderson,* 791 A.2d 54, 60

---

**2.** Appellant filed a notice of appeal after the court orally announced its ruling. When the court later issued a written order memorializing that ruling, appellant filed a second notice of appeal.

**3.** Neither party questions the principle that a default judgment is entitled to preclusive effect, *see, e.g., Morris v. Jones,* 329 U.S. 545, 550–51, 67 S.Ct. 451, 91 L.Ed. 488 (1947); *Riehle v. Margolies,* 279 U.S. 218, 225, 49 S.Ct. 310, 73 L.Ed. 669 (1929); *Firemen's Ins. Co. v. L.P. Steuart & Bro., Inc.,* 158 A.2d 675, 677 (D.C.1960); *Comer v. Fistere,* 103 A.2d 206, 208 (D.C.1954); *Woods v. Cannaday,* 81 U.S.App. D.C. 281, 282, 158 F.2d 184, 185 (1946), or the conclusion that the claim of wrongful eviction is precluded if the prior judgment is valid.

"A defendant is barred from relitigating a defense which was available in a prior action by making it the basis of a claim that would 'nullify the initial judgment or would impair rights established in the initial action.'" *Puerto Rico Maritime Shipping Auth. v. Federal Maritime Comm'n,* 75 F.3d 63, 67 (1st Cir.1996) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 22(2)(b) (1982)). *Accord,*

*Henderson v. Snider Bros., Inc.,* 439 A.2d 481, 486 (D.C.1981) (en banc) ("The grounds asserted in the complaint here could have been a good defense to the foreclosure. Having failed to raise the defense, they are now barred from raising it here as a separate cause of action."; construing Maryland law); *Rudell v. Comprehensive Accounting Corp.,* 802 F.2d 926, 928–29 (7th Cir.1986).

The essence of the tort alleged by Threatt is eviction without legal process. *Sarete, Inc. v. 1344 U St. Ltd. P'ship,* 871 A.2d 480, 490 (D.C.2005). Yet, the prior judgment established that Winston was entitled to possession of the apartment, and, as a result, the court issued process authorizing the eviction. Threatt therefore cannot succeed in his claim of wrongful eviction without nullifying the initial judgment or impairing rights established in the initial action. So long as it remains undisturbed, the prior judgment precludes Threatt's new claim.

**4.** These actions were brought "before the same court" even though they were assigned to different judges serving in different assignments. The establishment of the functional

(D.C.2002) (citations and internal quotations omitted). As the United States Court of Appeals for the District of Columbia Circuit persuasively explained:

> [W]hile res judicata exists in part to shield parties from duplicative and vexatious litigation, the interests that courts protect are also often their own—or, more precisely, those of society. Courts today are having difficulty giving a litigant one day in court. To allow that litigant a second day is a luxury that cannot be afforded.... As res judicata belongs to courts as well as to litigants, even a party's forfeiture of the right to assert it ... does not destroy a court's ability to consider the issue *sua sponte.*

*Stanton v. District of Columbia Court of Appeals,* 326 U.S.App. D.C. 404, 409, 127 F.3d 72, 77 (1997) (citations and internal quotations omitted). It clearly was within the trial court's discretion to raise the issue although the parties had failed to mention it.[5]

### III. How to Establish That a Default Judgment Is Void for Lack of Personal Jurisdiction

■ Threatt maintains that the doctrine of res judicata did not bar his wrongful eviction action because the default judgment granting possession to Winston was void for lack of personal jurisdiction. At oral argument he styled his complaint for damages as a permissible "collateral attack" on the previous judgment. We disagree and hold that, having allowed the time for appeal to expire, Threatt could attack the default judgment only by filing a motion to vacate pursuant to Superior Court Civil Rule 60(b)(4)[6] or by filing the type of "independent action" to vacate the judgment specifically authorized by Rule 60(b). *See Olivarius v. Stanley J. Sarnoff Endowment for Cardiovascular Science, Inc.,* 858 A.2d 457 (D.C.2004).

To be sure, we have held that a default judgment entered in the absence of effective service of process is void, even if the defendant has actual notice of the action. *Jones v. Hersh,* 845 A.2d 541, 546 (D.C. 2004) (citing *Miranda v. Contreras,* 754 A.2d 277, 281 (D.C.2000)). However, we have also stated that the concept of void judgments is to be narrowly construed and that "for a judgment to be void under Rule 60(b)(4),[7] *it must be determined* that the rendering court was powerless to enter it."

divisions of the Superior Court—including the Landlord–Tenant Branch—serves administrative convenience but does not establish the individual branches as separate courts or delimit their power as tribunals of the Superior Court with general jurisdiction over civil actions at law or in equity in the District of Columbia. D.C.Code § 11–921 (2001). *See Ali Baba Co. v. WILCO, Inc.,* 482 A.2d 418, 425 (D.C.1984); *Andrade v. Jackson,* 401 A.2d 990, 992–93 (D.C.1979).

5. *See McClain v. Apodaca,* 793 F.2d 1031, 1032 (9th Cir.1986) (reviewing for abuse of discretion trial court's decision raising the issue of res judicata *sua sponte* ).

6. Super. Ct. L & T R. 2 makes Civil Rule 60 applicable to proceedings in the Landlord and Tenant Branch.

7. Rule 60(b)(4) provides, in relevant part:

On motion and upon such terms as are just, the Court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:

(4) the judgment is void; ... A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This Rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis and audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these Rules or by an independent action.

*Jones,* 845 A.2d at 545 (internal citation and quotation omitted) (emphasis added). *See also* RESTATEMENT (SECOND) OF JUDGMENTS, ch. 5, intro. note, cmt. c (1982) ("a judgment can be said authoritatively to be 'void' only after it has been attacked and declared to be such"). The key question is how does one properly establish that the prior judgment was void?

Threatt essentially argues that he is entitled to file a new complaint and to ignore the default judgment. If no one had raised the prior judgment as a bar, he would have tried his claim of wrongful eviction, hoping to win a verdict holding Winston liable for doing what the Superior Court previously had authorized him to do. If the defendant (or the court, as happened here) raised the issue of res judicata, Threatt would then assert that the prior judgment is void because he was not properly served with process. As we emphasized in *Olivarius,* however, "[r]espect for the finality of judgments is deeply engrained in our legal system." 858 A.2d at 466–67 n. 5 (citing *Great Coastal Express, Inc. v. Int'l Brotherhood of Teamsters,* 675 F.2d 1349, 1356 (4th Cir.1982)). Moreover, as a general principle, the "orderly administration of justice and comity between courts are served by requiring the applicant to seek relief in the court that rendered the judgment." RESTATEMENT (SECOND) OF JUDGMENTS, ch. 5, intro. note, cmt. a (1982). Allowing Threatt to proceed in his unorthodox fashion would undermine the finality of judgments, create confusion, and needlessly increase the amount of litigation in our busy trial court. The Superior Court rules have prescribed a more orderly, sensible procedure.

**8.** "When a federal rule and a local rule contain the same language, we will look to federal court decisions interpreting the federal rule as persuasive authority in interpreting the lo-

## A.  Rule 60(b) Governs Setting Aside a Default Judgment

■ We previously have explained that Rule 60(b) "governs setting aside a default judgment." *Arthur v. District of Columbia,* 857 A.2d 473, 484 (D.C.2004). *Accord, Combs v. Nick Garin Trucking,* 263 U.S.App. D.C. 300, 304, 825 F.2d 437, 441 (1987) ("A motion to vacate a default judgment is governed by Federal Civil Rule 60(b)."); [8] *Calumet Lumber, Inc. v. Mid–America Indus.,* 103 F.3d 612, 614 (7th Cir.1997) ("Relief from entry of default judgment is governed by Federal Rule of Civil Procedure 60(b)"). The rule provides two mechanisms for doing this: "by motion . . . or by an independent action." On many occasions a litigant has filed a Rule 60(b)(4) motion arguing that a Superior Court default judgment was void because service of process was invalid. *See, e.g., Edelhoff v. Shakespeare Theatre,* 884 A.2d 643 (D.C.2005) (service of process by posting); *Miranda v. Contreras,* 754 A.2d at 281 (contesting affidavit asserting personal service); *Cruz v. Sarmiento,* 737 A.2d 1021 (D.C.1999) (service by publication); *McLaughlin v. Fidelity Security Life Insurance,* 667 A.2d 105 (D.C.1995) (delivery of summons and complaint to counsel in prior matter); *Alexander v. Polinger Co.,* 496 A.2d 267 (D.C.1985) (service by posting).

■ In most circumstances, whether to relieve a party from a final judgment pursuant to Rule 60 is a decision committed "to the sound discretion of the trial court." *Jones v. Hersh,* 845 A.2d at 544. However, "the trial court has no discretion when relief is sought pursuant to subdivision (4) of Rule 60(b) on the ground that the judgment is void." *Id.* at 545.

cal rule." *Oparaugo v. Watts,* 884 A.2d 63, 69 n. 1 (D.C.2005) (citations and internal quotations omitted).

"Whether a judgment is void is a question of law (though like all legal questions it may depend on the court's resolution of issues of fact), and if a judgment is void, it must be vacated." *Id.* Moreover, "Rule 60(b) places no time limit on an attack upon a void judgment, nor can such a judgment acquire validity because of laches on the part of him who applies for relief from it." *Alexander*, 496 A.2d at 269 (internal quotation and citation omitted).

Threatt's civil complaint obviously is not an attempt to set aside a judgment by motion (indeed, it does not even mention the prior judgment). We therefore turn to the question of whether he is permissibly attacking the prior judgment by means of an "independent action."

## B. Threatt's Complaint for Damages Is Not an "Independent Action" Authorized by Rule 60(b)

■ We explained in *Olivarius* that "Rule 60(b) preserves as a last resort the possibility that a court may entertain an independent action to relieve a party from a judgment." 858 A.2d at 466 (internal quotations omitted). We cautioned, however, that the prerequisites to relief by way of an independent equitable action are very strict:

> In the first place, the independent action contemplated by Rule 60(b) is available only to prevent a grave miscarriage of justice.... The party seeking relief must show that it would be "manifestly unconscionable" to allow the judgment to stand.... There are other equally important prerequisites to an independent action that Olivarius does not meet. The traditional requirements of an action in equity, including the absence of fault or negligence on the part of the movant, are strictly applicable.

*Id.* at 466–68 (internal citations and quotations omitted). We will not repeat all of our discussion in *Olivarius,* but given the stringent requirements for doing so, it is hard to understand why anyone would choose to pursue an independent action to vacate a judgment as void rather than file a motion under Rule 60(b)(4).

Indeed, Threatt did not even attempt to bring such an action. Several of the cases we cited in *Olivarius* provide clear examples of what an independent action to set aside a final judgment looks like—it must specifically ask a court to grant that relief. *See, e.g., United States v. Beggerly,* 524 U.S. 38, 41, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998) (complaint asking the court to set aside a 1982 settlement agreement and to award damages); *Geo. P. Reintjes Co. v. Riley Stoker Corp.,* 71 F.3d 44, 45–46 (1st Cir.1995) (filing independent action to set aside a judgment after discovery of fraud in procurement of the settlement agreement). *See also Hadges v. Yonkers Racing Corp.,* 48 F.3d 1320, 1321 (2d Cir.1995) (action pursuant to Rule 60(b) "to set aside the judgment of the court in an earlier case"). Threatt's complaint did not satisfy the foremost requirement of such an "independent action"—it did not even mention the prior judgment. In fact, in his October 31, 2003, brief submitted after Judge Terrell suggested the applicability of res judicata, Threatt stated unequivocally that "[p]laintiff does not seek here to vacate the underlying judgment in the suit for possession." He reaffirmed that position in the subsequent oral argument before the trial court and in his brief to this court.

Even if we were generously to construe Threatt's civil complaint as an "independent action" challenging the default judgment, it would fail. We explained in *Olivarius* that an independent action is a form of equitable relief. 858 A.2d at 466. It is available "only to prevent a grave miscarriage of justice." *Beggerly,* 524 U.S. at 47, 118 S.Ct. 1862. Moreover, "[i]t

is 'axiomatic' that equitable relief will not be granted where the plaintiff has a complete and adequate remedy at law." *Kakaes v. George Washington Univ.*, 790 A.2d 581, 583 (D.C.2002) (citations omitted). Thus, "[t]here is authority for the proposition that, if a Rule 60(b) motion is available, there is an adequate remedy and the independent action may be dismissed." 12 James Wm. Moore et al., Moore's Federal Practice § 60.82[3] (3d ed.2006). *See Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 662–63 (2d Cir. 1997) (appellants who did not take advantage of the adequate remedy at law afforded by Rule 60 could not seek relief in equity); *Taft v. Donellan Jerome, Inc.*, 407 F.2d 807, 809 (7th Cir.1969) ("[S]ince plaintiff has an adequate remedy at law [including a motion under Rule 60(b)(4)], this equitable cause of action must be dismissed."); Restatement (Second) of Judgments § 78, cmt. a ("the principle that equity will not grant relief when there is an adequate legal remedy implies that relief must ordinarily be sought through a 60(b) type of motion in preference to these other procedures"). *Cf. Indian Head Nat'l Bank of Nashua v. Brunelle*, 689 F.2d 245, 250 n. 9 (1st Cir.1982) (where adverse party is not prejudiced, independent action may be treated as a Rule 60(b) motion). We conclude that Threatt has not properly followed either of the procedures permitted by Rule 60(b).

## C. Other types of "Collateral Attack" Are Not Permitted in This Context

Threatt relies upon several cases which state that a judgment entered without jurisdiction may be challenged in a "collateral" proceeding,[9] and he insists that he is not limited to filing a Rule 60(b) motion. But to acknowledge that a void judgment may be collaterally attacked does not imply that a litigant may pursue each and every line of attack that might be described as "collateral."[10] As we have demonstrated, Rule 60 prescribes how the attack is to be launched. We are not aware of any controlling authority, and Threatt has not cited any, which holds that compliance with Rule 60(b) is merely optional in this context.[11]

It certainly is true that courts throughout the country have used the label "collat-

---

9. *See, e.g., Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982); *Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 525, 51 S.Ct. 517, 75 L.Ed. 1244 (1931); *Thompson v. Whitman*, 85 U.S. (18 Wall.) 457, 466, 21 L.Ed. 897 (1874); *Hinton v. Hinton*, 395 A.2d 7, 10 (D.C.1978) (a default judgment entered without jurisdiction "may be collaterally attacked").

10. Threatt quotes the following definition of "collateral attack": "any proceeding in which the integrity of a judgment is challenged, except those made in the action wherein the judgment is rendered or by appeal. . . ." *Higginson v. Schoeneman*, 89 U.S.App. D.C. 126, 128, 190 F.2d 32, 34 (1951). Threatt overlooks the fact that the court in *Higginson* refused to allow the collateral attack, explaining that: "If, as the appellees contend, the

judgment of the Court of Claims should have read 'with interest as provided by law,' the remedy of the appellees was to apply for a modification of the judgment in the Court of Claims." *Id.*

11. *See Cruz v. Sarmiento*, 737 A.2d at 1025–26 ("The power of a trial court to vacate or otherwise relieve a party from a prior judgment or order, other than merely for clerical mistakes, is circumscribed by Rule 60(b)."); *Clement v. District of Columbia Dep't of Human Servs.*, 629 A.2d 1215, 1220 (D.C.1993) (concluding that Civil Rules 59 and 60 did not grant authority to vacate judgment; "[w]e are not cited to, nor do we find, any precedent in this jurisdiction establishing inherent authority in a trial court to reopen a final definitive judgment once issued and markedly change its nature and effect.").

eral attack" to describe a proceeding in which a judgment of one court is challenged in a different forum. On the other hand, despite Threatt's suggestion that the term does not apply to such a motion, this court and others have referred to Rule 60(b) motions as collateral attacks. *See, e.g., Kammerman v. Kammerman,* 543 A.2d 794, 802 (D.C.1988); *FutureSource LLC v. Reuters, Ltd.,* 312 F.3d 281, 286 (7th Cir.2002); *Gschwind v. Cessna Aircraft Co.,* 232 F.3d 1342, 1346 (10th Cir. 2000) (Rule 60(b)(4) motion); *Crawford v. Honig,* 37 F.3d 485, 487 n. 1 (9th Cir.1995) (Rule 60(b)(4) motion). More fundamentally, use of labels such as "direct attack" and "collateral attack" has led to much confusion. With the merger of law and equity, and the adoption of modern rules of procedure, trying to draw such distinctions no longer is particularly helpful.[12] Rule 60 was adopted (and amended) to cabin and simplify the procedure for attacking a prior judgment of the same court.[13] At least in this context, where Threatt is litigating in the Superior Court while hoping to avoid any preclusive effect of a prior, final judgment of the Superior Court in a civil case, Rule 60 prescribes the only type of attack he may pursue.

The cases cited by Threatt do not endorse a contrary rule. *See, e.g., Pardo v. Wilson Line of Washington, Inc.,* 134 U.S.App. D.C. 249, 414 F.2d 1145 (1969) (collateral attack on New York judgment in District of Columbia U.S. District Court); *Diva Laboratorium Aktiengesellschaft v. DeLoney & Co.,* 237 F.Supp. 868 (D.D.C.1965) (collateral attack on prior judgment of the same court); *Leichtman v. Koons,* 527 A.2d 745 (D.C.1987) (collateral attack on Maryland default judgment in District of Columbia Superior Court); *Hinton v. Hinton,* 395 A.2d 7 (D.C.1978) (collateral attack on replevin default judgment, claiming it was void because unconstitutional); *Roebuck v. Walker–Thomas Furniture Co.,* 310 A.2d 845 (D.C.1973) (challenging Superior Court judgment under Super. Ct. Civ. R. 60(b)). We find nothing in these decisions that clearly authorizes Threatt to bypass Rule 60.

*Pardo* and *Leichtman* are examples of collateral attacks on a foreign judgment initiated in response to an effort of the prevailing party to enforce that judgment in another jurisdiction. "[I]n a suit upon the judgment of another state, the jurisdiction of the court which rendered judgment is always open to judicial inquiry.... If jurisdiction were lacking the judgment, of course, would not be entitled to full faith and credit." *Gilper v. Kiamesha Concord, Inc.,* 302 A.2d 740, 742 (D.C.1973) (citing *Adam v. Saenger,* 303 U.S. 59, 62, 58 S.Ct. 454, 82 L.Ed. 649 (1938)) (citations omitted). *Accord, Waltemeyer v. Stogner,* 87 A.2d 175, 176 (D.C.1952) ("The right of one sued on a foreign judgment to question the jurisdiction of the court to render such judgment is clear."). Nevertheless, the fact that the jurisdiction of the rendering court is subject to "judicial inquiry" does not mean that just any method of inquiry

---

**12.** As the drafters of the Restatement explained, "the distinction between 'direct' and 'collateral' attack is not helpful in analysis of the essential questions involved in determining whether relief from a judgment is appropriate in any given set of circumstances." RESTATEMENT, *supra,* ch. 5, intro. note, cmt. b.

**13.** *See Beggerly,* 524 U.S. at 45, 118 S.Ct. 1862 (1946 Amendment to federal Rule 60(b) "made clear that nearly all of the old forms of obtaining relief from a judgment, *i.e., coram nobis, coram vobis, audita querela,* bills of review, and bills in the nature of review, had been abolished"); 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER AND MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2851 (1995) ("Rule 60 regulates the procedures by which a party may obtain relief from a final judgment.").

will do. The process has now been regulated by D.C.Code § 15–352 (2001), a provision of the Uniform Enforcement of Foreign Judgments Act of 1990. That statute provides that a foreign judgment properly filed in the Superior Court "shall ... be subject to the same procedures, defenses, or proceedings for reopening, vacating, or staying as a judgment of the Superior Court...." *See Von Plinsky v. Harvey,* 820 A.2d 549, 550 (D.C.2003) (applying statute and reversing Superior Court order which had vacated a default judgment obtained in Virginia).

We have not had much occasion to interpret this statute, but many jurisdictions implement their version of it by holding that the proper way to attack a foreign judgment is by filing in the receiving jurisdiction a motion or independent action under Rule 60 (or the local equivalent). *See, e.g., Springfield Credit Union v. Johnson,* 123 Ariz. 319, 599 P.2d 772 (1979) (allowing an independent action in Arizona under Rule 60 to attack a default judgment rendered in Massachusetts); *Marworth, Inc. v. McGuire,* 810 P.2d 653, 656 (Colo.1991) (relief from foreign judgments available under Colo. R. Civ. P. 60(b)); *Arrowhead Alternator, Inc. v. CIT Communications Finance Corp.,* 268 Ga.App. 464, 602 S.E.2d 231, 232 (2004) ("The proper method for attacking a foreign judgment filed in Georgia under the Uniform Act is a motion to set aside under [the Georgia statutory equivalent of Rule 60]"); *Carr v. Bett,* 291 Mont. 326, 970 P.2d 1017, 1022 (1998) ("a Rule 60(b) motion is the appropriate motion to file to seek review of a foreign judgment filed in a Montana district court"). *But see Young v. Progressive Casualty Ins. Co.,* 108 Md.App. 233, 671 A.2d 515 (1996) (after District of Columbia Su-

perior Court default judgment was registered in Maryland, judgment debtor successfully moved Superior Court to vacate it under Rule 60(b)(4)). We need not explore this topic further, because the process for enforcing and attacking foreign judgments is governed by a distinct body of law not applicable to the case before us.[14]

Cases such as *Roebuck* and *Hinton,* while arising in more analogous contexts, do not lend any real assistance to Threatt. In *Roebuck,* a store repossessed some household furniture after securing a default judgment of replevin. 310 A.2d at 846–47. The purchasers then filed a complaint seeking damages for conversion of their furniture. Notably, however, they also sought to vacate the default judgment, alleging that the replevin statute deprived them of due process. *Id.* at 846 and 847 n. 7. While ultimately reversing the trial court's dismissal of the complaint because there were many unresolved factual issues, this court observed that "[t]he trial court correctly treated the complaint insofar as it sought to have vacated the prior judgment as a motion to vacate judgment under Super. Ct. Civ. R. 60(b)(4)." *Id.* at 846 (emphasis added). *Roebuck* actually reinforces the conclusion that Rule 60(b) governs attempts to set aside a final judgment.

Threatt places heavy reliance upon some of our language in *Hinton.* Read carefully, however, *Hinton* offers him no firm support. Describing a procedural route the appellant had not taken in that case, we stated that "if a defendant believes that the court is without jurisdiction he has the option to ignore the proceed-

---

14. We note that the court in *Diva Laboratorium Aktiengesellschaft* characterized a Rule 60(b) motion as a "direct" attack on a judgment rather than a "collateral" attack. 237

F.Supp. at 869. We have already demonstrated above that this court and others disagree. Moreover, that District Court decision is not binding upon us.

ings. Then if judgment unwarrantedly is entered against him by default, it may be collaterally attacked." 395 A.2d at 10. Importantly, we did not specify the proper method for collaterally attacking such a judgment. Nevertheless, we did make clear that the tactic chosen by the appellant, "the seeking of a temporary restraining order from one judge barring effectuation of what had been ordered by another judge," was improper. *Id.* at 11 n. 4. This comment implies that the proper way to attack the judgment would have been to petition the court that issued it. *See also Klein v. Rappaport,* 90 A.2d 834, 835 n. 1 (D.C.1952) (characterizing as an "irregularity" fact that motion to vacate a default judgment was heard by another judge). Analyzing the cases cited by Threatt does not persuade us that he is entitled to bypass Rule 60(b).

The Restatement acknowledges that a third or "defensive" mode of relief (in addition to a Rule 60(b) motion or an independent action) may be available "when enforcement of the judgment is undertaken by the person in whose favor it was rendered." RESTATEMENT, *supra,* ch. 5, intro. note, cmt. b. "When the beneficiary of the judgment ... relies on it as a basis of additional relief, the person against whom that relief is sought can defend on the ground that the judgment is invalid or otherwise not justly enforcible." *Id.* This option does not help Threatt because the beneficiary of the prior judgment did not initiate this action. Even if it appropriately could be said that Threatt is "defending" against use of the prior judgment to preclude his claim, the defensive mode of relief is subject to the principles embodied

in § 80 of the Restatement,[15] including "the general principle that relief from a judgment should be sought in the court that rendered the judgment." *Id.,* cmt. a. *Cf. Brady v. Graham,* 611 A.2d 534, 535 & n. 6 (D.C.1992) (after writ of attachment was issued, judgment debtor moved under Rule 60(b) to set aside default judgment). To reiterate, when a litigant in the Superior Court is attacking the validity of a civil judgment previously entered by the Superior Court in a separate lawsuit, Rule 60(b) provides the procedure to be followed.

### D. *Queen v. Postell* Is Not Controlling

Threatt understandably relies upon our decision in *Queen v. Postell,* 513 A.2d 812 (D.C.1986). There, as here, the lessees of an apartment became embroiled in a dispute over the payment of rent, prompting the landlord to file an action for summary possession. *Id.* at 813. Prior to the scheduled court date, the parties had discussions which the lessees later claimed had settled the dispute. As a result, the lessees asserted, they did not appear at the scheduled hearing. *Id.* at 814. The landlord did appear, however, and, after a default judgment was entered against the lessees, secured a writ of restitution and had them evicted from the apartment. *Id.* at 813.

As Threatt did here, the lessees commenced a new lawsuit alleging wrongful eviction, breach of covenant of quiet enjoyment, and conversion. *Id.* at 812. Before trial, the landlord asserted that the action was barred by res judicata because of the default judgment granting summary pos-

---

**15.** Entitled "Relief in the Course of a Subsequent Action," § 80 provides: "When a judgment is relied upon as the basis of a claim or defense in a subsequent action, relief from the judgment may be obtained by appropriate pleading and proof in that action if other means of obtaining relief from the judgment are unavailable to the applicant or the convenient administration of justice would be served by determining the question of relief in the course of the subsequent action." RESTATEMENT, *supra,* § 80.

session. *Id.* at 814. However, the trial court in *Queen* denied the landlord's motion to dismiss; it allowed the jury to determine whether the case had been settled or compromised and, if so, whether the eviction violated that settlement. *Id.* at 814–15.[16] The jury awarded damages to the former tenants and we affirmed, explaining:

> [I]f a plaintiff in a lawsuit unequivocally accepts a settlement offer, this has the effect of lulling the defendant into believing that interposing a defense or filing a motion to dismiss is unnecessary. Hence, even if a plaintiff did not deliberately intend to trick his opponent into foregoing a defense or missing a trial date, he may be liable for breach of contract unless he instructs his counsel to act affirmatively to prevent execution of a default judgment.

*Id.* at 815.

Threatt claims that the procedure he used is permitted by our decision in *Queen.* We acknowledge the similarities between the two cases, but conclude that our opinion in *Queen* was not intended to create an exception to the limitations imposed by Rule 60(b). Indeed, we did not even mention Rule 60. We focused on grounds which would justify depriving a default judgment of preclusive effect, but conducted no analysis of the proper procedure for attacking a default judgment. *Queen* cannot be read as controlling, given our rulings in *Arthur, Cruz, Clement,* and *Olivarius.*[17]

## IV. Conclusion

The orderly administration of justice and the explicit commands of the civil rules required Threatt to attack the prior judgment under Rule 60(b)(4) if he wanted to avoid its preclusive effect. Thus, the trial court did not err in concluding that the doctrine of res judicata barred Threatt's complaint for wrongful eviction. The judgment of the Superior Court is hereby

*Affirmed.*

---

16. In his brief and at oral argument counsel for appellant Threatt suggested that the jury empaneled to hear his suit for wrongful eviction might be called upon to decide facts which would determine whether the default judgment was void for lack of jurisdiction. We reject this suggestion. Issues of fact underlying a Rule 60(b) motion are determined by the court. *See Jones v. Hersh,* 845 A.2d at 545 ("whether a judgment is void is a question of law (though like all legal questions it may depend on the court's resolution of issues of fact)...."). *Cf. Leichtman v. Koons,* 527 A.2d at 748 ("in an action to enforce a foreign judgment, material issues of fact concerning the jurisdiction of the foreign court, such as

[proper service of process], should be tried by the court"). The preclusive effect of a prior judgment should be determined before a new case is allowed to go to trial.

17. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.... [T]he judicial mind was not asked to focus upon, and the opinion did not address, the point at issue...." *Alfaro v. United States,* 859 A.2d 149, 154 (D.C.2004) (citations and internal quotations omitted).