Jaime CARRASCO, Appellant,

v.

THOMAS D. WALSH, INC., Appellee.

No. 09–CV–288.

District of Columbia Court of Appeals.

Argued Dec. 14, 2009.

Decided Jan. 28, 2010.

Tiffany Johnson, with whom Robert W. Busby and Nabeel R. Cheema were on the brief, for appellant.

Brian D. Riger for appellee.

Before GLICKMAN, THOMPSON and OBERLY, Associate Judges.

GLICKMAN, Associate Judge:

Jaime Carrasco appeals an order denying his motion pursuant to Civil Rule 60(b) [1] to void or vacate a default judgment entered in favor of his landlord, appellee Thomas D. Walsh, Inc. ("Walsh"), for possession of Carrasco's rented apartment. We hold that the trial court correctly rejected Carrasco's claim that the judgment was void under Rule 60(b)(4) for lack of legally effective service of process. However, we are persuaded that the court abused its discretion by denying Carrasco's motion to vacate the judgment under Rule 60(b)(6) without giving proper consideration to all the factors relevant to such a decision. We remand the case for the court to reconsider that motion on its merits.

**I.**

The proceedings in question took place in the Landlord and Tenant Branch of Superior Court. They began on October 25, 2007, when Walsh filed a complaint for possession based on Carrasco's failure to pay rent for the period September 1 through October 31, 2007. In an affidavit of service filed on November 21, 2007, the process server averred that he attempted personal service of the summons and complaint on two occasions without success and then effected service by posting and first class mail. While Carrasco does not dispute the process server's factual averments, he claims he nonetheless did not receive actual notice of the proceeding. He did not appear in court on the return date, December 4, 2007, and the trial court entered a default judgment against him.

Carrasco further claims that even though he never received the court's formal notification of the payment he would have to make to avoid being evicted (the so-called *Trans–Lux* amount),[2] he in fact paid Walsh the necessary amount by the end of January 2008.[3] Notwithstanding Carrasco's rent payments to Walsh during the pendency of the suit for possession, which are undisputed, the eviction was carried out in his absence on February 25, 2008. When Carrasco returned to his apartment, he found some of his personal property on the sidewalk, but he alleges that most of his belongings were stolen or damaged by looters and that his losses exceeded $13,000. Not until then, Carrasco claims, was he aware that a judgment for possession had been entered against him.[4]

---

1. Super. Ct. Civ. R. 60(b).

2. A tenant may stay his eviction even after the landlord has obtained judgment for possession by "paying to the landlord before 'execution is executed' the rent due, together with all interest and costs owed at the time of tender." *Davis v. Rental Associates, Inc.*, 456 A.2d 820, 830 (D.C.1983) (discussing *Trans–Lux Radio City Corp. v. Service Parking Corp.*, 54 A.2d 144, 147 (D.C.1947)); *see also Butler v. Whitting*, 647 A.2d 383, 384 (D.C.1994).

3. According to the court's December 5, 2007, notice, Carrasco could forestall his eviction by paying two months' rent ($1160) plus court costs (totaling $171.91) before the end of January 2008. Carrasco claims he paid more than that sum by January 25. He alleges that he also made a partial payment in February, prior to his eviction, pursuant to an agreement he had reached with Walsh to pay his rent in bimonthly installments.

4. Carrasco claims that Walsh's employees did not inform him of the pending eviction proceeding even as they continued to accept his

Carrasco filed his Rule 60(b) motion with a supporting affidavit on February 20, 2009, a year after he was evicted. He attributed the delay to his inability to obtain counsel despite diligent efforts.[5] In seeking relief from the default judgment, Carrasco disclaimed any desire to regain possession of the apartment he rented from Walsh. Rather, he sought to overturn the judgment so as not to be precluded on res judicata grounds from pursuing a claim against Walsh for wrongful eviction.[6] Walsh filed no response to the motion. On March 9, 2009, after a brief non-evidentiary hearing consisting mainly of a colloquy between the trial court and Carrasco's counsel, the court denied the motion.[7]

## II.

■ We review the denial of a motion to vacate a default judgment for abuse of discretion, but in view of the "strong judicial policy" favoring the decision of cases on their merits rather than by default, "even a slight abuse" of the trial court's discretion is enough to justify reversal.[8] We perceive no abuse of discretion in the trial court's denial of Carrasco's motion to vacate the default judgment as void under Rule 60(b)(4). We conclude, however, that the court's inquiry was inadequate to justify its denial of relief under Rule 60(b)(6).

### A. Relief from a Void Judgment Pursuant to Rule 60(b)(4).

■ A default judgment entered in the absence of legally effective service of process is void, and relief from such a void judgment may be sought by motion pursuant to Rule 60(b)(4).[9] Under some circumstances, however, service may be legally sufficient even if the defendant did not receive actual notice. Carrasco does not dispute the process server's averments that he unsuccessfully attempted personal service on more than one occasion before resorting to posting and mailing.[10] By statute in the District of Columbia, this constituted legally effective service of the complaint and summons in an action for possession.[11] Unlike the cases on which Carrasco relies, this is not a case in which the landlord was on notice that posting and mailing would be ineffective and therefore was obligated to make a "diligent and conscientious effort" to pursue other readily available means of contacting the tenant.[12]

---

several rent payments through February 22, 2008. Additionally, he alleges, Walsh had his telephone number and email address but never contacted him by either means to inform him of the possession action.

5. Carrasco claims he sought help from the District of Columbia Landlord Tenant Resource Center and four different legal service providers before he finally was able to obtain pro bono counsel at the end of 2008.

6. See Threatt v. Winston, 907 A.2d 780, 782 n. 3 (D.C.2006).

7. Although counsel for Walsh was present at the hearing, the court did not hear from him.

8. Hawkins v. Lynnhill Condo. Unit Owners Ass'n, 513 A.2d 242, 244 (D.C.1986).

9. Miranda v. Contreras, 754 A.2d 277, 281 (D.C.2000).

10. We have stated that "the return of service by a process server may be impeached only by strong and convincing evidence, and cannot be held ineffective solely on the ground that court papers were not delivered to a defendant." Firemen's Ins. Co. of Washington, D.C. v. Belts, 455 A.2d 908, 909 (D.C.1983) (citations omitted).

11. See D.C.Code § 16–1502 (2001).

12. See Edelhoff v. Shakespeare Theatre at the Folger Library, Inc., 884 A.2d 643, 645–46 (D.C.2005) (quoting Frank Emmet Real Estate, Inc. v. Monroe, 562 A.2d 134, 136 (D.C. 1989)).

### B. Vacatur Pursuant to Rule 60(b)(6).

 Rule 60(b)(6) permits the trial court to relieve a party from a final judgment "upon such terms as are just" for "any other reason justifying relief." We have identified five factors the court should consider in evaluating whether to grant relief under this provision: (1) whether the movant had actual notice of the proceeding; (2) whether he acted in good faith; (3) whether he presents a prima facie adequate defense; (4) whether he acted promptly in seeking relief; and (5) the potential prejudice to the non-moving party from granting the motion.[13] Carrasco argues that the trial court failed to consider these factors adequately, if it considered them at all, despite their applicability in his favor (assuming the truth of his allegations, which has not yet been determined). We are constrained to agree.

 First, Carrasco averred in his affidavit that he did not receive actual notice of the proceeding. This claim, though Carrasco has not substantiated it, is not inherently incredible, nor did Walsh contest it. It is not belied by the process server's affidavit [14] or any other evidence of record. Arguably, Carrasco's claim is supported by the fact, which Walsh does not deny, that he continued to make rent payments until he was evicted. If it is true, as Carrasco alleges, that he paid the full *Trans–Lux* amount necessary to avoid being evicted, it is hard to fathom why he would have ignored the pending complaint for possession unless he was unaware of it.

The trial court erred in discounting Carrasco's lack-of-actual-notice claim on the ground that service by posting and mail was sufficient to satisfy statutory notice requirements. If the court was not prepared to accept the truth of Carrasco's claim that he was unaware of the eviction proceeding, it should have afforded him the chance to prove it in an evidentiary hearing.[15]

 Second, Carrasco's claim that he acted in good faith also is supported by his continuing payment of rent (even, potentially, the full *Trans–Lux* amount) during the pendency of the eviction proceeding. The trial court found that Carrasco did not act in good faith only because he did not go to the landlord's office *after the eviction* to inquire why all his belongings had been thrown out on the street. Given Carrasco's (unchallenged) claim that he went instead to the police, to the Landlord Tenant Resource Center, and to four legal services organizations, we cannot agree that his failure to confront Walsh personally in the immediate aftermath of his eviction was a sign of bad faith. By that time, the damage was done.

 Third, it appears the trial court did not appreciate that Carrasco presented a prima facie adequate defense. If, by the end of January 2008, Carrasco had paid the *Trans–Lux* amount that had been set by the court, as he alleged and Walsh did not deny, his eviction should have been stayed. The eviction should not have gone forward even though Carrasco subsequently did not pay all the rent due for the month of February (which he acknowl-

---

**13.** *Miranda,* 754 A.2d at 280; *Starling v. Jephunneh Lawrence & Assocs.,* 495 A.2d 1157, 1159–60 (D.C.1985).

**14.** Service by posting and mail, the sole method utilized by the process server, is "disfavored" because it is known to be "less reli-

able" than other methods. *Jones v. Hersh,* 845 A.2d 541, 547 (D.C.2004).

**15.** *See Miranda,* 754 A.2d at 282; *Hawkins,* 513 A.2d at 245; *see also, e.g., Chappelle v. Alaska Seaboard Partners,* 818 A.2d 972, 974 (D.C.2003).

edged at the hearing, claiming that it was pursuant to an agreement he had reached with his landlord).

Fourth, it is true that Carrasco did not act promptly in seeking relief from the court, inasmuch as he did not move to vacate the default judgment until a year after he was evicted. The trial court attached great (if not decisive) weight to this factor. Motions under Rule 60(b)(6) must be made within a "reasonable time," and the passage of a year may render a motion untimely "absent compelling reasons for the delay."[16] But what constitutes a reasonable time under Rule 60(b) "depends upon the circumstances of each case,"[17] including both the cause and the consequences of the delay. Here, the circumstances, as alleged by Carrasco and not disputed by Walsh, were extenuating: Carrasco had lost much of his property in the eviction and was homeless; he was living out of his car; his ability to communicate in English was limited; and despite his diligent efforts he was unable to obtain legal assistance until late in 2008. The trial court faulted Carrasco for not promptly appearing in court pro se, as many aggrieved tenants do. Whether a busy judge of the Landlord and Tenant Branch of Superior Court would have perceived the possible merits of Carrasco's claim had he appeared and tried to articulate it without legal representation is, of course, unknowable; some would be inclined to doubt it. Be that as it may, we think the trial judge unduly minimized the extent to which Carrasco's practical ability to protect his interests following his eviction was impaired.

Furthermore, in deciding whether Carrasco should be penalized for not moving more expeditiously to set aside the default judgment, it makes sense to consider the fifth factor pertinent to a Rule 60(b) motion—whether and to what extent the non-movant would be prejudiced by granting the movant's request for relief. That question has yet to be explored in this case. Prejudice to the landlord might be fairly apparent if Carrasco were seeking to resume his tenancy, but he is not. No prejudice to Walsh was identified in the record below, perhaps because the trial court ruled without hearing from the landlord's counsel. The fact that vacatur of the default judgment would remove a res judicata bar to a wrongful eviction action against Walsh does not demonstrate the sort of delay-caused prejudice that would justify denying relief.

We conclude, based on the record of the March 9, 2009, hearing, that the trial court's consideration of Carrasco's Rule 60(b)(6) motion to vacate the default judgment was too cursory to fulfill the court's "responsibility to inquire where matters are raised which might entitle the movant to relief" under the Rule.[18] Accordingly, though we affirm the denial of Carrasco's motion to void the judgment under Rule 60(b)(4), we reverse the denial of his Rule 60(b)(6) motion and remand for a more thorough inquiry.

*So ordered.*

**16.** *Puckrein v. Jenkins,* 884 A.2d 46, 58 (D.C. 2005).

**17.** *Id.*

**18.** *Miranda,* 754 A.2d at 280 (quoting *Starling,* 495 A.2d at 1162).