# District of Columbia
# Court of Appeals

**No. 15-CV-146**

TURQUOISE WYLIE,



FILED

JUL 21 2016

DISTRICT OF COLUMBIA
COURT OF APPEALS

Appellant,

v.

**CTB-15864-14**

GLENNCREST,

Appellee.

On Appeal from the Superior Court of the District of Columbia
Civil Division

BEFORE: THOMPSON and EASTERLY, *Associate Judges*; and KRAVITZ, *Associate Judge, Superior Court of the District of Columbia*[*].

## J U D G M E N T

This case came to be heard on the transcript of record and the briefs filed, and was argued by counsel. On consideration whereof, and as set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the judgment on appeal is reversed, and the case is remanded for full consideration of appellant's Rule 60(b)(1) & (6) motion, as well as for a resolution of other questions that might support relief under Rule 60(b)(4).

For the Court:

JULIO A. CASTILLO
Clerk of the Court

Dated: July 21, 2016.

Opinion by Associate Judge Catharine Easterly.

---

[*] Sitting by designation pursuant to D.C. Code § 11-707 (a) (2012 Repl.).

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-CV-146

FILED 7/21/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

TURQUOISE WYLIE, APPELLANT,

V.

GLENNCREST, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(LTB-15864-14)

(Hon. Wendell P. Gardner, Jr., Trial Judge)

(Argued January 19, 2016                                      Decided July 21, 2016)

*Jonathan H. Levy*, with whom *Rachel A. Rintelmann* was on the brief, for appellant.

*Mark R. Raddatz*, with whom *E.L. Pugh II* was on the brief, for appellee.

Before THOMPSON and EASTERLY, *Associate Judges*, and KRAVITZ, *Associate Judge, Superior Court of the District of Columbia*.[*]

EASTERLY, *Associate Judge*: Turquoise Wylie appeared in court in response

to a lawsuit for nonpayment of rent filed against her by Glenncrest, her landlord,

_____

[*] Sitting by designation pursuant to D.C. Code § 11-707 (a) (2012 Repl.).

but she failed to return to court for the rescheduled initial hearing. The trial court entered a default against her and ultimately granted Glenncrest a judgment for possession. Ms. Wylie subsequently filed a pro se motion to vacate this default judgment pursuant to Super. Ct. Civ. R. 60 (b). The trial court held a hearing, but even though the parties disputed issues of fact, the court heard no testimony and took no evidence. Moreover, the court's consideration of the factors bearing on Ms. Wylie's motion for relief from a default judgment was skewed toward upholding the default judgment—as it did—instead of favoring a decision on the merits. Concluding that the trial court abused its discretion, we reverse and remand.

## I.   Facts

Ms. Wylie was a long-time tenant of Glenncrest. By the time Glenncrest filed and served[2] its complaint for possession due to nonpayment of rent, Ms. Wylie had been living in a Glenncrest townhouse at 5069 Kimi Gray Court, S.E.,

---

[2] Glenncrest's Affidavit of Service states that it served the complaint on Ms. Wylie's son, described as "BM 5'5[,] 150 lb[,] 17." Ms. Wylie's brief before this court, however, states that her oldest child was, at the time of filing (over a year after the complaint was served), only sixteen years old.

for approximately eight years. Glenncrest's complaint alleged that Ms. Wylie had failed to pay rent from January through June 2014.

At the initial hearing in July 2014, Ms. Wylie and counsel for Glenncrest each entered an appearance and together signed a praecipe asking for a one-month continuance.[3] At the further initial hearing in August, Ms. Wylie failed to appear, and Glenncrest requested and obtained an entry of default. The court scheduled an "ex parte proof hearing"[4] and, according to the docket, mailed a notice addressed to Ms. Wylie with the following information:

> The above-captioned Landlord and Tenant case has been scheduled for Ex Parte Proof Hearing on the date and time shown below. All parties shall appear before Judge COURTROOM LANDLORD & TENANT.

---

[3] No explanation was provided for this request. The praecipe simply asked the court to "please continue this matter to August 22, 2014 at 10 A.M. with all rights reserved."

[4] *See* Super. Ct. L&T R. 11 (e)(1) (requiring, in any case in which a defendant has previously entered an appearance, a presentation of "ex parte proof" before judgment for possession by default may be entered, and, if the proof is not presented on the date the default is entered and a hearing is scheduled for a later date, notice to be sent to all parties); *see also Hawkings v. Lynnhill Condominium Unit Owners Ass'n*, 513 A.2d 242, 244 n. 2 (D.C. 1986) (distinguishing between a "default," which is simply a recognition that "a defendant has failed to plead or otherwise defend," and a "default judgment," which would conclude the litigation and is subject to additional procedural requirements).

Hearing Date:  September 12, 2014

Time:  10:00 am.

Location:    510 4th Street, NW., Washington, DC 20001
LandLord & Tenant Courtoom B-109

PLEASE BRING THIS NOTICE WITH YOU WHEN
YOU APPEAR.

Ms. Wylie did not appear in court on September 12, 2014, and the ex parte proof hearing was held without her.  At the hearing, Glenncrest's counsel asked its property manager, Ophelia Johnson, to read into the record a provision in Ms. Wylie's lease expressly waiving her right to a 30-day notice to quit or vacate.[5]  Ms.

---

[5]  Ms. Wylie's lease does not appear in the record, either as a freestanding document or as an attachment to Glenncrest's complaint, though Glenncrest's complaint alleges that Ms. Wylie's lease included provisions waiving her right to a notice to quit and setting fees for late rent payments.  Assuming Ms. Wylie's lease contained such a waiver provision, it is unclear whether that provision had any force.  In her brief to this court, Ms. Wylie asserts that her unit was subsidized housing subject to federal public housing regulations (she cites 24 C.F.R. § 966.4 (l)(3)) that bar such a waiver.  Section 966.4 (l)(3) requires that tenants be provided with written "[l]ease termination notices."  *See also* 24 C.F.R. § 966.6 (d) (prohibiting inclusion of  lease provisions waiving  such notice).

The exact status of Ms. Wylie's home and her attendant notice-to-quit rights were never probed in the trial court because Glenncrest, in its form complaint, checked the box indicating that Ms. Wylie's home was not subsidized.  There are reasons to question this representation, however.  First, Glenncrest's counsel asserted at the ex parte proof hearing that Ms. Wylie's townhouse was a "HUD tax subsidy property."  And, at oral argument before this court, Glenncrest's counsel both (1) acknowledged that his law firm had been sued in connection with misrepresentations made by its attorneys in Landlord and Tenant Court about the subsidized status of certain rental properties in the District, *see Lipscomb v. The*

(continued…)

Johnson also testified that Ms. Wylie owed $2,556.99 for some combination of past-due rent, late fees,[6] and utility bills. The court entered a redeemable judgment for possession in favor of Glenncrest, with a *Trans-Lux*[7] amount of $2,556.99. Four days later, the trial court issued a notice to Ms. Wylie informing her that a judgment of possession for nonpayment of rent had been entered against her, and that she would have to pay $2,592 (the *Trans-Lux* amount plus court costs) to avoid eviction. Ten days later, the Superior Court issued a writ of restitution to the U.S. Marshal Service. On September 30, 2014, two and a half weeks after the ex parte proof hearing, the U.S. Marshals Service evicted Ms. Wylie.

---

(…continued)
*Raddatz Law Firm*, 109 F. Supp.3d 251, 255 (D.D.C. 2015) (denying defendants motion to dismiss plaintiffs' Fair Debt Collection Practices Act case explaining that plaintiffs' theory was that "Defendants incorrectly stated that their rents were not subsidized in order to mislead the tenants for the unilateral benefit of the Defendant's landlord clients, and to avoid alerting the tribunal to the existence of special defenses"), and (2) seemed to concede that a (possibly sanctionable) misrepresentation may have been made in this case.

Questions abound, but depending on the status of the property and the attendant notice-to-quit requirements, Ms. Wylie may have an additional defense to Glenncrest's complaint. *See infra* note 27.

[6] *But see Falconi-Sachs v. LPF Senate Square, LLC*, No. 14-CV-433, 2016 WL 3654466, at *4-5 (D.C. July 8, 2016) (acknowledging that such set late fees may be unenforceable penalty provisions).

[7] So called after *Trans-Lux Radio City Corp. v. Serv. Parking Corp.*, 54 A.2d 144, 146 (D.C. 1947) (acknowledging that until an eviction for non-payment of rent is executed, the tenant has an equitable right to retain possession of the property by paying "the rent due, with interest and costs").

On December 17, 2014, Ms. Wylie, representing herself, filed a Rule 60 (b) motion[8] to vacate the trial court's judgment for possession, as well as an answer to Glenncrest's complaint, an application to reduce the payment required to avoid eviction, and a motion to restore herself and her family to the townhouse. In these pro se filings, Ms. Wylie asserted that she did not owe back rent for January through June 2014 (the six months identified in the complaint)—only rent for September 2014 (the month she was evicted), plus a late fee and $301.52 outstanding on a previous settlement agreement with Glenncrest. Moreover, in her Rule 60 (b) motion, Ms. Wylie explained that she "did not understand" that she needed to return to court in August because she had "an out-of-court agreement with [her] landlord," and that after missing this August hearing she had not received notice of the ex parte proof hearing.

The trial court held a hearing on Ms. Wylie's motions in January 2015. Ms. Wylie (still representing herself) and counsel for Glenncrest were both present, as was Tiffany Talbert, a Glenncrest property manager. Immediately after the court called the case, counsel for Glenncrest tried to persuade the court that Ms. Wylie's motions should be summarily denied in light of the fact that Ms. Wylie had "just

---

[8] Ms. Wylie's motion relied on a court-provided template and did not specify any particular subsection of Rule 60 (b).

popped up 90 days after the eviction"; that she "admit[ted] in her motion that she owed money" (though he acknowledged the parties "don't agree on the amount"); that the case had already gone to "a full ex [parte proof] hearing"; and that the "unit [had] been re-rented." Counsel for Glenncrest added that the only reason the case had been continued from the initial hearing date in December was to give Ms. Wylie the opportunity to find a lawyer.

Ms. Wylie responded that she "didn't just pop up 90 days later"; rather, ever since her eviction, she had been trying to rectify the situation. Specifically, Ms. Wylie asserted that she had been trying to contest the default judgment, first by trying to secure counsel and legal advice through Bread for the City, and then by repeatedly consulting the Superior Court's Landlord Tenant Resource Center:[9]

---

[9] According to the Superior Court website, "[t]he Landlord Tenant Resource Center provides free legal information to both unrepresented landlords and unrepresented tenants who have residential housing disputes." DISTRICT OF COLUMBIA COURTS, *Landlord and Tenant Resource Center*, http://www.dccourts.gov/internet/public/ltresourcecenter.jsf (last visited June 21, 2016). The Resource Center is staffed by volunteer attorneys who "help self-represented persons understand court proceedings," "assist self-represented persons prepare pleadings," "coach self-represented persons how best to present cases in court," "provide information on how to obtain continuances and retain counsel," "make referrals to legal service providers in appropriate cases," and "inform low-income litigants of financial and other social service resources that might be available and refer them to the appropriate resources." *Id.*

> I went through Bread for the City first to obtain legal advice and try to get a lawyer. Then I've been coming down here to the Resource Center and all my paperwork that showed that it's been taking me this long to even file my motions when I filed them in December. I had got that opportunity because I've been doing everything they've been telling me to do to try to get some type of representation or just get some type of advice or how can I continue to make my case. That's why it's been taking . . . this long since I got put-out.

The court seemed to credit Ms. Wylie's assertions that she had been trying to obtain legal assistance, but nonetheless faulted her for not filing anything in court sooner, noting that the "people out here in the Resource Center . . . . [t]hey're independent people . . . . They don't work for us. You didn't tell anybody in the Court until over two months later that they . . . put you out under these circumstances . . . ." Ms. Wylie explained that she had been working to collect documentation to support her defenses, per the Resource Center's recommendation. She further explained that when she received the writ of restitution she tried to avert eviction by calling Ms. Crystal Cove, who was Glenncrest's property manager at the time. Ms. Wylie stated that she thought there had been a mistake—that the issuance of the writ was based on her "account balance which was already wrong . . . . [So] I'm not taking it serious, I'm like okay, they're going to fix it." But before she could go into more detail, the court

cut her off and shifted the conversation to why she had failed to appear in court at the further initial hearing in August 2014.

Apparently referring back to the representation in Ms. Wylie's Rule 60 (b) motion that she and her landlord had agreed that she did not have to return to court, the trial court asked Ms. Wylie why, "if the people don't have your rent calculated correctly . . . . would you put faith in anything they're saying." Ms. Wylie indicated that she thought everything had been straightened out at the July 2014 proceeding. She told the court she had shown Glenncrest's counsel both (1) a record of her account balance, which reflected that she did not owe back rent but instead owed money on her water bill, and (2) a copy of an agreement that she had signed with a Glenncrest representative in May 2014, to cover the amount owed, $603.06, in four payments of $150.76.[10] Having spoken to Glenncrest's counsel

---

[10] Although no court proceedings had been initiated at the time, the private May 2014 agreement was styled as a court document, with the notation, "Superior Court for the District of Columbia, Civil Division," at the top. The text of the agreement provided that

> The Clerk of said Court will[] [p]lease note this matter is settled based on the following: 1. The parties agree that $603.06 will be due and owing through September 2014. 2. Tenant agrees to make (4) equal payments of $150.76 to come current. 3. Tenant understand [sic] that if one single payment is missed or if rent is not paid in full and by the 5th day of each month beginning in June 2014, for

(continued…)

and having explained that she was "balancing my job and coming down in and on that particular day it was real hectic," Ms. Wylie understood that she did not have to attend the August 22 hearing so long as she "continue[d] on with what I was doing, catch up with my July payment in August and that's what I did."[11] The court asked Ms. Wylie if Glenncrest's counsel had told her, "Don't come down on the 22nd." Ms. Wylie acknowledged that he "didn't say it [in] those same words." Counsel for Glenncrest then flatly denied either telling Ms. Wylie that she did not need to come back to court or implying as much, to which Ms. Wylie responded, "No, that's wrong, that's wrong, that's wrong, that's wrong."

---

(…continued)

> the next 12 months the Plaintiff shall be entitled to possession of the unit.

The Document was signed by Ms. Wylie and a representative for the landlord on May 22, 2014.

The agreement was not formally admitted into evidence, but the court asked to see it. The court expressed concern that the settlement had been represented to be "under the auspices of . . . the Superior Court," and indicated disapproval with this "sl[eight] of hand gambit." In response, counsel for Glenncrest protested that he did not create the document: "[T]hat's an out-of-court agreement done with the property manager who's no longer with the company." The court seemed appeased by Glenncrest's counsel's representation that Glenncrest had not sought to evict Ms. Wylie on the basis of a violation of this agreement.

[11] Ms. Wylie explained that she made two payments under the agreement but that she did not pay off her full obligation because "they put me out by then." The court noted that Ms. Wylie had not been evicted until the end of September and, although Ms. Wylie's payments on her outstanding water bill had no bearing on the landlord's suit for back rent from January to June 2014, stated "you sure hadn't paid them by September the 30th."

Without resolving what counsel had said, whether counsel had implied that Ms. Wylie did not have to return to court, or whether Ms. Wylie might have reasonably construed counsel's statements to convey that message, the court briefly shifted its focus to the basis of Glenncrest's suit, clarifying that it was unrelated to her water bill and based on her alleged nonpayment of rent. Despite Ms. Wylie's repeated assurances that she had rent receipts proving she had paid her rent for all the months listed as unpaid in the complaint,[12] the trial court did not examine Ms. Wylie's documents. Instead, the court returned to the issue of her failure to return to court, asking why, if Ms. Wylie had in fact paid her rent, she had not come back to court in August to challenge Glenncrest's case against her. Ms. Wylie again admitted that she had missed the August hearing but explained "[t]hat was the only court date that I didn't come on . . . and then I didn't even know nothing about no September the 12th court date. I didn't get no notice for me to come to court September 12th."

The court did not follow up with any questions about Ms. Wylie's failure to appear at the September ex parte proof hearing. Instead, the court continued to

---

[12] Ms. Wylie represented that she had paid her rent ($366), although, because she paid her rent late, she included a late fee: "I pay my late fee every time. I always got $387."

focus on Ms. Wylie's nonappearance at the August proceeding. The court opined that Ms. Wylie's current efforts to reopen her case were "too little too late because if you've paid six months of rent when you're coming in July, and they say you haven't paid the six months and you've got receipts that you have paid it, seems to me, you need to be getting a trial or something," but "[a] default was entered because you didn't come on August the 22nd." The court was unmoved when Ms. Wylie reiterated her misunderstanding regarding her obligation to appear at the hearing in August: that, when counsel for Glenncrest "told me to catch-up with my July payment I owed, I just took that as if I did that, then it wouldn't be a necessary thing for me to come" in August.[13]

Without inquiring further, the court denied Ms. Wylie's Rule 60 (b) motion.[14] The court quickly reviewed the grounds for relief from judgment under

---

[13] Although Ms. Wylie argued that she had misunderstood her obligation to attend the August proceeding, the court nonresponsively noted that Glenncrest's counsel had denied telling her not to come back to court: "I asked him did he say it and he said he didn't."

[14] The court also denied Ms. Wylie's other motions. It determined that it could not reduce the payment to avoid eviction because the eviction had already occurred, and that it could not grant the motion to restore because another family was already living in Ms. Wylie's former home.

Rule 60 (b)(1)-(6)[15] and determined that none of those subsections applied. Finally, alluding to considerations established by case law for review of Rule 60 (b)(1) and (b)(6) motions—whether the movant (1) had actual notice of the proceedings, (2) acted in good faith, (3) took prompt action, (4) made a prima facie showing of an adequate defense, and lastly (5) whether vacatur would prejudice the non-moving party, *see infra* Part II—the court made a number of statements in support of its determination that relief from judgment was not warranted.

First, the trial court stated that Ms. Wylie had had actual notice of the August 2014 hearing and that, when she missed that hearing, the court properly scheduled an ex parte proof hearing. This prompted Ms. Wylie to protest, again, that she had not received advance notice of the ex parte proof hearing: "I didn't get no court date, I did not get no court papers, Judge, for me to come to court September 12th. I got the court papers in . . . mid-September of whatever they

---

[15] These subsections of Rule 60 (b) authorize relief from judgment where there is "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application, or (6) any other reason justifying relief from the operation of the judgment." Super. Ct. Civ. R. 60 (b).

filed in court that day, I got the paper after . . . they [evicted me]. I did not get no court paper for me to come to court."

Without addressing this contention, the court additionally said that it did not "see how [Ms. Wylie] acted promptly" in seeking relief from judgment and seemed to accept Glenncrest's counsel's representation that his client would be prejudiced by vacatur of the judgment because Ms. Wylie still owed Glenncrest $2,500 and because the unit had been re-rented. As to the amount owed, Ms. Wylie again asserted that "I have proof of my rent," and that "Tiffany [Talbert, the property manager who was present in court] knows." Ms. Wylie pleaded with the court, "Oh, oh, please let [Ms. Talbert] talk because she actually knows about this, she knows about it[,] she really do, she knows about it." But instead, without taking sworn testimony from Ms. Talbert, Ms. Wylie, or anyone else, and without taking any documents into evidence, the court indicated that it did not matter what Ms. Wylie's actual defense was because she had failed to litigate her case.

In response to Ms. Wylie's strenuous assertions that she did not owe any rent, that her dispute with Glenncrest was all about past unpaid water bills amounting to hundreds—not thousands—of dollars, and that Glenncrest "was wrong from the jump," the court asked,

> [W]ell why do you think you were going to get them to do it right by your lonesome, why would you think that? And then have the Court intervene in a situation that you found yourself in? You were relying on everything they told you and from your perspective, they were the ones that started by doing the wrong thing in the first place. It's just not adding up, that you're putting so much faith and confidence in people that are trying to cheat you out of your money.

The court then resumed its review of the "factors of whether I should vacate the default judgment."

The court reiterated its view that Ms. Wylie "had the actual notice and . . . just didn't show up." As to whether Ms. Wylie "present[ed] a prima facie defense," the court, still without reviewing any of Ms. Wylie's documents, determined "well her prima facie defense I guess is payment, so she does do that." The court stated that whether Ms. Wylie "acted in good faith, well that's questionable." Considering whether Ms. Wylie "acted promptly," the court simply said, "[N]o." And assessing "[w]hether the mov[ing] party would be prejudiced," the court said "yes," because, if Glenncrest restored Ms. Wylie's tenancy, it would have to evict any new tenants who had moved into her home. In short, the trial court opined that Ms. Wylie had "had the opportunity to go before a judge and have your case heard . . . but you didn't avail yourself of the opportunity."

Ms. Wylie asked the court to reconsider, arguing that "this is something I wasn't even use[d] to. I did everything, I'm doing all of this on my own. I don't have, I'm not having no help from nobody." She further explained that she was a "single parent with four kids now. I would never put my family and my kids in no predicament like this . . . . I work hard every day. I go to work every day faithfully to take care of myself." But the court responded, "I think you had some responsibility in this. And the things that you say, he says just the opposite and I don't know necessarily, you're the moving party, that I'm going to credit your statement over his statement." The court indicated that it might have seen things differently if Ms. Wylie had "not wait[ed] until the last minute . . . to engage the court with [her] story." Even then Ms. Wylie tried to argue that she had not known what to do after she was evicted, and that while it had taken until December to file her motions, she could now "show . . . proof of everything." But the court informed Ms. Wylie that it was "not going to be able to vacate the default judgment based on what I've heard here today, so your request is denied."

Ms. Wylie filed a notice of appeal and eventually obtained counsel. This appeal followed.

## II.    Analysis

The decision to set aside a default judgment is generally committed to the sound discretion of the trial court.[16]  *See Jones v. Hersh*, 845 A.2d 541, 544-45

---

[16]  We recognize an exception to this rule when reviewing a denial of a motion for relief from judgment under Rule 60 (b)(4), which authorizes a trial court to vacate a void judgment; in such a case, the question whether relief is to be granted is one of law, and thus our review is de novo. *See Jones*, 845 A.2d at 545. Ms. Wylie seeks the benefit of our nondeferential review under Rule 60 (b)(4). She cites *Hudson v. Shapiro*, 917 A.2d 77, 83 (D.C. 2007) (quoting *Jones*, 845 A.2d at 545-46), in which we acknowledged that if a "court's action in entering the default judgment was 'so arbitrary as to violate due process,'" the judgment might be void and subject to vacatur under Rule 60 (b)(4). In particular, she argues that the judgment against her was void because she did not receive from the court either notice of Glenncrest's application for default judgment, as she asserts was required in this case by Rule 55 (b)(2), or notice of the ex parte proof hearing that must precede the issuance of a default judgment, as required by Landlord-Tenant Rule 11 (e).

The written notice requirement of Rule 55 (b)(2) does not apply in the Landlord and Tenant Branch. Under Landlord-Tenant Rule 2, certain Superior Court Rules of Civil Procedure, including Rule 55, apply in landlord-tenant cases, but only to extent they are not "inconsistent with the provisions of the Landlord and Tenant Rules"). Here, Landlord-Tenant Rule 11 (e) is inconsistent with the notice requirements of Rule 55 (b)(2), and it thus occupies the field.

Landlord-Tenant Rule 11 (e) provides, in pertinent part: "In cases requiring the presentation of ex parte proof, the plaintiff shall appear before the judge on the day that the default is entered to present ex parte proof or to schedule a hearing for a later date for the presentation of ex parte proof. If the presentation of ex parte proof is scheduled for another date, the Clerk shall send written notice to all parties." The rule does not require the tenant to be provided with written notice of a request for the entry of a default judgment; the only written notice required, if any, is the Clerk's notice of an ex parte proof hearing set for a date after the date on which the default was entered. *See supra* note 3.

(continued…)

(D.C. 2004). But because this court "universally favor[s] trial on the merits, even a slight abuse of discretion in refusing to set aside a default judgment may justify reversal." *Starling v. Jephunneh Lawrence & Assocs.*, 495 A.2d 1157, 1159 (D.C. 1985); *Dunn v. Profitt*, 408 A.2d 991, 993 n.3 (D.C. 1979) (per curiam) ("A motion to vacate a default judgment . . . . is entitled to more liberal consideration [than a motion to vacate a judgment after a trial] in light of the strong judicial policy favoring a trial on the merits.").

Courts reviewing motions seeking relief from judgment under either Rule 60 (b)(1) or Rule 60 (b)(6) must consider five factors to determine whether the requested relief is warranted: whether the movant (1) had actual notice of the proceedings, (2) acted in good faith, (3) took prompt action, (4) made a prima facie showing of an adequate defense, and (5) whether vacatur would prejudice the non-moving party. *See Carrasco v. Thomas D. Walsh, Inc.*, 988 A.2d 471, 475 (D.C.

_____

(…continued)

As for whether Ms. Wylie received notice of the ex parte proof hearing per Landlord-Tenant Rule 11, the Superior Court docket indicates that notice was mailed to her on the date her default was entered. On appeal, Ms. Wylie argues that this creates only a rebuttable presumption of mailing and asks us to find that the trial court erred by failing to rule that the default judgment against her was void. Ms. Wylie may explore this issue further on remand, but since it has yet to be established that she lacked notice of the ex parte proof hearing, we need not determine whether such a failure of notice would render the judgment void as a matter of law.

2010); *Starling*, 495 A.2d at 1159-60.[17]  "Where [a] defaulting party is not guilty of wilful neglect and acts with reasonable diligence after the default has been entered, sound judicial discretion requires setting aside the default if there is a prima facie showing of a meritorious defense and if setting aside the default will not prejudice the substantive rights of the opposing party." *Westmoreland v. Weaver Bros., Inc.*, 295 A.2d 506, 508 (D.C. 1972) (quoting *Italia Societa Anonima Di Navigazione v. Cavalieri*, 99 A.2d 488, 489 (D.C. 1953)); *see, e.g.*, *Dunn*, 408 A.2d at 993 (reversing denial of motion to vacate where "there is no indication of either wilful or negligent disregard of court processes"); *cf. Tennille v. Tennille*, 791 A.2d 79, 85 (D.C. 2002) (affirming denial of motion to vacate where the movant "willfully disregarded the court's processes").  The trial court in this case identified the correct inquiry and alluded to the requisite factors, but we conclude that its ruling on Ms. Wylie's motion cannot stand.

---

[17]  Ms. Wylie never explicitly states in her brief that she is entitled to relief from judgment under either Rule 60 (b)(1) (authorizing relief on grounds of mistake, inadvertence, surprise, or excusable neglect) or 60 (b)(6) (authorizing relief for "any other" appropriate reason), but given her reliance on *Carrasco*, 988 A.2d at 476 (reversing denial of relief from judgment under Rule 60 (b)(6) and remanding for "a more thorough inquiry"), and *Starling*, 495 A.2d at 1162 (holding relief from judgment was warranted under either Rule 60(b)(1) or 60 (b)(6)), we understand that to be her argument.

## A.     The Trial Court's Failure to Conduct an Adequate Inquiry

Before we address the trial court's analysis, we focus on the "hearing" held by the court; it was inadequate. Ms. Wylie appeared in court with documents in hand, ready to try to prove that the default judgment against her was not the product of willful neglect on her part—that she had sought to challenge the default judgment entered against her as soon as she, a pro se litigant, possibly could, and that she had a meritorious defense to Glenncrest's suit.  The trial court met Ms. Wylie's assertions with skepticism if not disbelief, but it never gave her an opportunity to present witness testimony (even though she begged the court to hear from Ms. Talbert, the property manager) and never allowed her to put her documents into evidence (even though she repeatedly told the court she had "proof of everything").  The court's observation—"[T]he things that you say, he says just the opposite and I don't know necessarily, you're the moving party, that I'm going to credit your statement over his statement"—encapsulates the procedural catch-22 the court created.  The court recognized that Ms. Wylie had the burden of proof.  It declined to credit her version of events over the conflicting representations of

Glenncrest's counsel. But it failed to allow Ms. Wylie the opportunity to substantiate her assertions with evidence.[18]

In landlord-tenant court, as in any other branch of Superior Court, trial courts have an obligation to conduct a meaningful inquiry "where matters are raised which might entitle [a] movant to relief under Rule 60 (b)." *See Miranda v. Contreras*, 754 A.2d 277, 280 (D.C. 2000); *Walker v. Smith*, 499 A.2d 446, 449 (D.C. 1985) ("[I]t is incumbent upon the trial court to conduct a proper inquiry into the factors behind a party's motion for dismissal of default."). Indeed, adequate inquiry into the grounds for a party's Rule 60 (b) motion is especially important in landlord-tenant court, where the vast majority of tenants, like Ms. Wylie, proceed pro se because they cannot afford counsel and are unable to obtain free representation from the District's oversubscribed legal services providers. *See Pajic v. Foote Props., LLC*, 72 A.3d 140, 146 n.8 (D.C. 2013) (citing statistic that in the 2005 calendar year, tenants proceeded pro se in D.C.'s landlord-tenant court 97% of the time). In such cases the court must protect a pro se movant's "right to

---

[18] Even as Ms. Wylie was denied the opportunity to present evidence, we note that Glenncrest's counsel was permitted to function in the dual role of attorney proffering facts on behalf of his client and witness providing his recollection of communications with Ms. Wylie, in one instance declaring that he was "personally testify[ing]" about the rental status of Ms. Wylie's former home. *But see* D.C. Bar R. 3.7 (a)(1); *see also S.S. v. D.M.*, 597 A.2d 870, 877 (D.C. 1991) (reviewing Rule 3.7's prohibition on attorneys serving as both advocate and witness in a single case).

be heard" and ensure that a full record is made. *Walker*, 499 A.2d at 449. "To do less would be to too heavily tip the scales in favor of the need for finality in litigation" and "can lead to grave consequences." *Id.*

The adequacy of a trial court's inquiry depends on the nature of the issues before the court. An inquiry may be less formal if the facts are undisputed or immaterial, or if the representations made by a party seeking relief from judgment are inherently incredible. *See Carrasco*, 988 A.2d at 475-76 (holding that tenant was entitled to evidentiary hearing on issue material to tenant's Rule 60 (b)(6) motion where tenant's factual contention was not inherently incredible). But a trial court must hold an evidentiary hearing when it needs to make credibility determinations and resolve material disputes of fact. *See id.*; *Eaddy v. United States*, 276 A.2d 232, 233-34 (D.C. 1971) (per curiam) ("In order to exercise properly its discretion under G.S. Civ. Rule 60(b) as to whether to vacate the default judgment, it was incumbent upon the court to hear and assess the testimony of appellant. This was not done, though appellant was present in the courtroom and available for testimony.").[19] Such a hearing was required in this case.

---

[19] *See also Lyons v. United States*, 833 A.2d 481, 488 n.13 (D.C. 2003) ("[W]here, as here, there are claims . . . that, if believed, would warrant relief, a final determination can be made only after an evidentiary hearing—as with any other case where a material fact, grounded on credibility, must be established.");

(continued…)

**B.** **The Trial Court's Failure to Properly Evaluate the Factors Relevant to Whether Relief from Judgment Should be Granted**

After failing to conduct an adequate inquiry into the parties' factual disputes, the trial court applied an unduly restrictive version of the five-factor test under Rule 60 (b). We discuss these factors in more detail below. Assuming the truth of Ms. Wylie's assertions for purposes of our analysis, we conclude that she made a powerful case for relief under all of these factors. If Ms. Wylie can substantiate these assertions on remand, then the default judgment should be vacated, and Ms. Wylie should be given the opportunity to challenge Glenncrest's case against her on the merits.

---

(…continued)

*Garzon v. District of Columbia Comm'n on Human Rights*, 578 A.2d 1134, 1141 (D.C. 1990) (concluding that "without accompanying testimony at an evidentiary hearing," documentation "sworn and unsworn, telling different stories" gave the fact-finder "no reliable basis for assessing [the parties'] credibility"); *cf. Thomas v. United States*, 942 A.2d 1180, 1184 (D.C. 2008) ("When issues of credibility are crucial to a determination of whether a defendant is entitled to a new trial, the judge must have an evidentiary basis—usually developed at a hearing where the relevant witnesses testify—before the new trial motion may be denied.").

1.    *Actual notice*

It is uncontested that Ms. Wylie had "actual notice" of Glenncrest's suit for nonpayment of rent:  in response to Glenncrest's complaint, she appeared in court for the initial hearing as originally scheduled in July 2014.  But in this case that is not the end of the Rule 60 (b) actual notice inquiry.  The object of such an inquiry is to determine whether the movant willfully neglected her obligation to litigate. *See Westmoreland*, 295 A.2d at 508; *Dunn*, 408 A.2d at 993.  Where the movant's failure to appear at a particular hearing prompts a default judgment or the dismissal of a case, the actual notice factor asks whether that failure to appear resulted from the movant's deliberate neglect of her litigation responsibilities. *See Panici v. Rodriguez*, 689 A.2d 557, 559-60 (D.C. 1997) (finding that plaintiff's failure to appear at an initial scheduling conference, after the defendants filed an answer to the complaint, did not warrant dismissal of the suit where there was no "indication in the record that the trial court determined" that plaintiff's "failure to appear was an act of willful and deliberate delay").

In this case, the trial court concluded that, after appearing at the July 2014 initial hearing, Ms. Wylie "just didn't show up" to the further initial hearing in August.  But it failed to resolve disputed issues of fact as to why Ms. Wylie had

failed to appear in August, and it failed even to acknowledge that it should consider Ms. Wylie's assertion that she had not received notice for the subsequent ex parte proof hearing in September, at which the court granted Glenncrest a redeemable judgment of possession.[20] *Contra Panici*, 689 A.2d at 559-60 (finding trial court's "actual notice" analysis inadequate where plaintiff's explanation for his nonappearance at a scheduling conference was "dismissed summarily").

Ms. Wylie informed the court that she did not understand that she had to attend the further initial hearing in August, even though she signed a praecipe agreeing to a continuance, because she thought that she had resolved the issue with Glenncrest's counsel out of court in July. She explained that she thought that the suit arose from a misunderstanding about her nonpayment of rent; that in July she talked to Glenncrest's counsel and showed him that she was current on her rent and only owed money on her water bill; and that, after this conversation, she thought that the suit would go away if she just kept making payments on her water bill. Glenncrest's counsel countered that he never instructed Ms. Wylie not to return to court. If Ms. Wylie had indeed been led by Glenncrest's counsel to believe she did

---

[20] Because Ms. Wylie had entered an appearance at the July proceeding, the court could not grant Glenncrest a default judgment for possession without holding an ex parte proof hearing. *See supra* note 3; *Butler v. Harden*, 131 A.3d 877, 880 (D.C. 2016).

not need to return to court in August, she would not have willfully disregarded her notice of the August hearing. *Cf. Panici*, 689 A.2d at 559-60. But the court failed to take the necessary steps to resolve the clear dispute of fact on this point. Instead of taking sworn testimony from Glenncrest's counsel and Ms. Wylie, and making explicit credibility determinations, *cf. Thomas*, 942 A.2d at 1184, the court simply credited Glenncrest's counsel's denials.

Ms. Wylie also informed the court that she "didn't even know nothing about no September the 12th court date," and thus had no advance notice, as required by Landlord-Tenant Rule 11 (e)(1), of the ex parte proof proceeding. Although it is not inherently incredible that Ms. Wylie failed to receive a notice sent by first class mail,[21] and Glenncrest did not contest her assertion, the court did not address her claim.[22] Again, the trial court failed to fulfill its role as fact-finder. "If the court

---

[21] *Carrasco*, 988 A.2d at 475 (finding that tenant's claim that he did not receive notice by mail was not inherently incredible); *cf. Jones*, 845 A.2d at 547 (acknowledging that service by posting and mail is "disfavored" because it is known to be "less reliable" than other methods).

[22] Separately, even assuming Ms. Wylie did receive notice of the ex parte proof hearing, we are concerned about the adequacy of the form notice issued by the court. This notice states only that something called an "Ex Parte Proof Hearing" would be held on a certain day. But the notice does not explain what the purpose of such a proceeding might be—i.e., to rule on the landlord's request for the entry of a default judgment and, in cases based on the tenant's nonpayment of rent, to determine the amount a tenant owes and must pay to avoid eviction and

(continued…)

was not prepared to accept the truth of" Ms. Wylie's claim that she was unaware of the ex parte proof hearing, "it should have afforded [her] the chance to prove it in an evidentiary hearing." *Carrasco*, 988 A.2d at 475; *see also Hawkins v. Lynnhill Condo. Unit Owners Ass'n*, 513 A.2d 242, 244-45 (D.C. 1986) (holding that the trial court abused its discretion by concluding that defendant was validly served without resolving the factual dispute).

---

(…continued)

retain possession of her home. This meaning is hardly obvious even to a reader accustomed to legal jargon ("ex parte," the only descriptor, ordinarily means that a proceeding is held in the absence of the opposing party; but in the court's form notice, the tenant is directed to attend). We expect it is entirely unclear to most pro se litigants. Certainly it is not the type of plain, simple, and straightforward language that would, consistent with the Code of Judicial Conduct and the Strategic Plan of the District of Columbia Courts, promote the understanding of persons who are unable to obtain counsel and are left to navigate the court system on their own. *See* Rule 2.6 (A) ("A judge shall accord to every person who has an interest in a proceeding . . . the right to be heard according to law"); Comment to Rule 2.6 (recognizing that judges should make reasonable accommodations for self-represented litigants to ensure they "understand the proceedings and the applicable procedural requirements," including "refraining from using legal jargon"); Goal 2, Part B of the Strategic Plan of the DC Courts, 2013-2017 (recognizing as a court-wide goal: "[h]elp[ing] the public better understand court processes and proceedings by using plain language in written documents.").

## 2. *Good faith*

The court determined that it was "questionable" whether Ms. Wylie acted in good faith given her failure to return to court sooner. But again, the court had no foundation for such an assessment. *See Frausto v. U.S. Dep't of Commerce*, 926 A.2d 151, 155 (D.C. 2007) (finding trial court's determination of bad faith unfounded where trial court did not provide Rule 60 (b) movant with an opportunity to substantiate her explanation for her non-appearance at a hearing). The court failed to take testimony or review evidence either supporting or contradicting Ms. Wylie's explanations for her failure to appear at the August and September hearings, instead choosing to credit (absent any express credibility determination) the unsworn statements of Glenncrest's counsel. The court also failed to review the documents that Ms. Wylie offered as proof that she had been attempting to contest the eviction since October[23] and that she had a valid basis to do so because she was not six months behind on her rent, as Glenncrest alleged.

---

[23] If substantiated, these efforts are clearly evidence of Ms. Wylie's good faith. *See Carrasco*, 988 A.2d at 475 ("Given Carrasco's (unchallenged) claim that he went . . . to the police, to the Landlord Tenant Resource Center, and to four legal services organizations, we cannot agree that his failure to confront Walsh personally in the immediate aftermath of his eviction was a sign of bad faith.").

More particularly, although Glenncrest's representations to Ms. Wylie were unquestionably relevant to the court's good-faith inquiry, the court's focus on whether Glenncrest had affirmatively misled Ms. Wylie about her obligation to return to court in August was too limited. Ms. Wylie could have reasonably misunderstood her obligation to return to court whether or not Glenncrest affirmatively misled her. Without knowing precisely what was said at the July proceeding, and without reviewing Ms. Wylie's rent records (which might have supported her belief that Glenncrest's suit was a mistake), the court could not adequately assess whether Ms. Wylie reasonably misunderstood her litigation obligations.

Lastly, to the extent the court questioned Ms. Wylie's good faith because she, acting pro se, relied on representations made by Glenncrest's counsel, we take issue with the court's analysis. The trial court asked why, if "the people don't have your rent calculated correctly," Ms. Wylie "would . . . put faith in anything they're saying," and "why do you think you were going to get them to do it right by your lonesome; why would you think that?" A trial court should generally be cautious before admonishing a pro se litigant about her failure to litigate her case properly, and certainly should refrain from admonishing a pro se litigant for trusting the

representations of the opposing party's lawyer if the trial court has not yet conducted the requisite fact-finding.[24]

3.      *Promptness in seeking relief*

The trial court determined that Ms. Wylie had not acted promptly in seeking relief from default judgment.  What constitutes reasonably "prompt action" under Rule 60 (b) "depends upon the circumstances of each case."  *Carrasco*, 988 A.2d at 476.  In *Carrasco*, the tenant did not file his Rule 60 (b) motion until a year after the default judgment was entered.  This court acknowledged that "the passage of a year may render a motion untimely, absent compelling reasons for the delay," *id*., but then determined that extenuating circumstances justified the one-year delay in that case:  the tenant "had lost much of his property in the eviction [conducted in February 2008] and was homeless; he was living out of his car; his ability to communicate in English was limited; and despite his diligent efforts he . . .  was unable to obtain legal assistance until late in 2008."  *Id.*

---

[24]   The court did review the faux court-approved settlement; curiously, this document did not appear to undermine Glenncrest's credibility in the court's eyes.

The record in this case reflects that judgment was entered against Ms. Wylie on September 12, 2014; that she was evicted on September 30, 2014; and that she filed her Rule 60 (b) motion on December 17, 2014.  Accounting for the two-and-a-half weeks between the entry of judgment and her eviction, Ms. Wylie told the court that she thought the issuance of the writ of restitution was a mistake and that she had not taken it seriously because she had spoken with the property manager and believed that Glenncrest was "going to fix it."  Accounting for the two-and-a-half months between her eviction and the filing of her Rule 60 (b) motion, Ms. Wylie explained that after she was evicted, she tried unsuccessfully to get a lawyer and then, proceeding pro se, tried to determine how to undo the default judgment with the assistance of the Landlord Tenant Resource Center.  Ms. Wylie also told the court that she was a single parent with four children and that she worked.[25]

Just as the court inadequately evaluated other factors relevant to Ms. Wylie's motion for relief from judgment, the trial court inadequately assessed the timeliness of Ms. Wylie's motion.  Preliminarily, if the court was not persuaded by

---

[25]  In her brief on appeal, Ms. Wylie further represents that she was nearly eight months pregnant at the time of her eviction, that she went into early labor shortly after the eviction, that her newborn son was hospitalized in the neonatal intensive care unit after his birth, and that she had to find housing for her three other children, all while maintaining her full-time job.

Ms. Wylie's representations that she was diligent in her efforts to seek relief from default judgment, it should have permitted Ms. Wylie to present the evidence she said she had in hand to substantiate those representations. But we are also concerned that the trial court "unduly minimized the extent to which [Ms. Wylie's] practical ability to protect h[er] interests following h[er] eviction was impaired." *Carrasco*, 988 A.2d at 476. Under the proffered circumstances—where Ms. Wylie had been evicted from her home, did not have a lawyer to represent her, was working full-time, and was trying to take care of four children as a single parent— three months hardly seems an inordinate amount of time for her to return to court. If upon adequate factual development Ms. Wylie's representations to the court prove true, this factor should weigh in her favor in seeking relief from judgment.

4.      *Prima facie showing of an adequate defense*

Ms. Wylie represented to the court that she had records of her rent payments showing that she did not owe Glenncrest rent for the six months alleged in the complaint. If true, this would have established a complete defense to Glenncrest's suit for nonpayment of rent. The trial court never looked at Ms. Wylie's records. Nevertheless, it weighed this factor in her favor. Even so, we pause to discuss the court's consideration of this factor.

While a movant need only make a prima facie showing of a meritorious defense, a trial court might nonetheless benefit from a more sustained inquiry into the strength of the proffered defense. First, a more careful assessment of Ms. Wylie's defense might have assisted the court in evaluating other factors relevant to Ms. Wylie's request for relief. For example, records showing payment of her rent might have supported a conclusion that Ms. Wylie was acting in good faith, and that she had done the best she could to get back to court as quickly as possible under the circumstances. After all, she had little reason to sit on evidence that could defeat Glenncrest's suit. Second, the core inquiry in whether to grant a motion for relief from a default judgment is whether the judicial policy favoring a trial on the merits outweighs the need for finality. *See Dunn*, 408 A.2d at 993. The stronger the movant's merits showing, the stronger the case for relief from judgment. Where the movant's defense appears not only colorable but meritorious, the need for finality should give way. *Starling*, 495 A.2d at 1160 (reiterating that courts have an obligation to "zealously safeguard the right of the citizen to have the opportunity to defend himself against suits on claims to which he may have a meritorious defense") (quoting *Newman v. Universal Enterprises, Inc.*, 129 A.2d 696, 699 (D.C. 1957)).

Here, little consideration was given to the strength of Ms. Wylie's defense, as demonstrated by the trial court's failure to review her rent receipts. In the trial court's view, Ms. Wylie had had "the opportunity to go before a judge and have [her] case heard" but she had not "avail[ed] [her]self of th[is] opportunity." In other words, even if Ms. Wylie had an unassailable defense, finality was more important. By undervaluing a meritorious defense and by failing to appreciate the connection between this defense and the other considerations relevant to Ms. Wylie's motion, the trial court abused its discretion even as it weighed this factor in Ms. Wylie's favor.

5.      *Prejudice to the non-moving party*

The trial court concluded that Glenncrest would be prejudiced by an order granting Ms. Wylie's motion. It reasoned that if Ms. Wylie were then to prevail on the merits of Glenncrest's suit, Glenncrest would have to evict any new tenants who had moved into Ms. Wylie's home.[26] But this reasoning carried the court too far down the stream of logical consequences. The question before the court was whether Glenncrest would be prejudiced by an order setting aside the default

---

[26] Aside from Glenncrest's counsel's "personal[] testi[mony] that the unit's rented," *see supra* note 18, no evidence was presented that such tenants existed.

judgment and allowing Ms. Wylie the opportunity to defend against Glenncrest's suit for possession; there was no guarantee she would prevail. Moreover, even if the court had assumed Ms. Wylie's success, it could not assume that Glenncrest could make Ms. Wylie whole only by displacing any tenants who might be occupying her former home. Other remedies might suffice (for example, Glenncrest might place her family in a different unit, or give them priority for the next available unit, or help Ms. Wylie find another unit within her budget).[27]

### III. Conclusion

In sum, the trial court's consideration of Ms. Wylie's Rule 60 (b) motion to vacate the default judgment was "too cursory to fulfill the court's 'responsibility to inquire where matters are raised which might entitle the movant to relief' under the Rule." *Carrasco*, 988 A.2d at 476 (quoting *Miranda v. Contreras*, 754 A.2d 277, 280 (D.C. 2000)). The court should have held an evidentiary hearing to resolve

---

[27] Glenncrest also argued that it would be prejudiced if Ms. Wylie were granted relief from judgment because she still owed Glenncrest money, but that argument begs the unresolved question of success on the merits. The court seemed rightly to reject this argument. *See Mewborn v. U.S. Life Credit Corp.*, 473 A.2d 389, 391 (D.C. 1984) (explaining that when money is at stake, "there can be no prejudice to appellee from vacation of the default judgment since its claim will survive").

material issues of fact and to make credibility determinations. On the record that was developed, the court's evaluation of the requisite Rule 60 (b) factors was deficient in a number of respects and overemphasized finality in disregard of this court's strong preference for obtaining judgments on the merits. Concluding that the trial court abused its discretion, we reverse and remand for full consideration of Ms. Wylie's Rule 60 (b)(1) & (6) motion, as well as for a resolution of other questions that might support relief under Rule 60 (b)(4).[28]

---

[28] As discussed above, we are concerned about the legitimacy of Ms. Wylie's waiver of notice to quit under applicable federal regulations. *See supra* note 5. Glenncrest conceded at oral argument that Ms. Wylie was not given notice to quit in this case, and this failure could provide Ms. Wylie with another defense on the merits that the court should consider under Rule 60 (b)(1) & (6).

In addition, we are concerned about the adequacy of Glenncrest's substitute service of the summons and complaint in light of Ms. Wylie's son's age. *See supra* note 2; Super. Ct. L&T R. 4 (requiring service in compliance with D.C. Code § 16-1502, which permits substitute service "by leaving a copy with some person *above the age of sixteen years* residing on or in possession of the premises sought to be recovered" (emphasis added)). Because a court lacks personal jurisdiction to issue a default judgment in the absence of legally effective service of process, such a judgment is void and subject to vacatur under Rule 60 (b)(4). *Carrasco*, 988 A.2d at 474 ("A default judgment entered in the absence of legally effective service of process is void, and relief from such a void judgment may be sought by motion pursuant to Rule 60 (b)(4)"); *Jones*, 845 A.2d at 546 ("A default judgment entered in the absence of effective service of process is void, even though the defendant has actual notice of the action.").

Lastly, Ms. Wylie's argument that she failed to receive notice of the ex parte proof hearing as required by Rule 11 (e), if substantiated, may support an argument that the default judgment was void and subject to vacatur under Rule 60 (b)(4). *See supra* note 15.

*So ordered.*